A92A1031. GEORGIA MUTUAL INSURANCE COMPANY
v. GARDNER et al.
(422 SE2d 324)

McMurray, Presiding Judge.

This appeal arises from an action for declaratory judgment brought by the appellant Georgia Mutual Insurance Company ("Georgia Mutual") seeking a determination with respect to its obligation to defend appellee Roger C. Gardner in a lawsuit brought against him by the other named appellees for damages resulting from an automobile collision on March 12, 1989. The facts are not in dispute; the only issue for review is the trial court's finding that the notice requirements of OCGA § 33-22-13 (c) apply to both the notice of intent to cancel and the notice of cancellation, and that Georgia Mutual did not properly cancel a policy of insurance issued to Gardner prior to the collision.

On December 7, 1988, Georgia Mutual issued a policy insuring an automobile owned by Gardner. At the same time, Gardner executed a premium finance agreement with GMIC Premium Finance Company ("GMIC") which provided that the first payment was due on January 7, 1989, with three monthly payments due thereafter on the first day of each successive month until paid in full. The premium finance agreement contained the following power of attorney provision: "The named insured hereby irrevocably appoints [GMIC] Attorney-in-Fact with full authority, in the manner prescribed by applicable laws, to cancel the Policies listed, or any renewal or rewrite thereof, to receive all sums assigned to the Company, and to execute and deliver on behalf of the undersigned all documents, forms and notices relating to the Policies listed in furtherance of this agreement. This power of attorney is coupled with an interest and cannot be revoked to the extent of the authority granted herein." The premium finance agreement also provided that in the event of default of payment of any installment due or the breach of any other term, unless cured within ten days after GMIC mailed written notice of its intent to cancel the policy to Gardner at the address shown therein, GMIC could request cancellation of the policy by Georgia Mutual.

Gardner failed to make the second payment due on February 7, 1989. A ten-day notice of intent to cancel was mailed to Gardner and his insurance agent on February 15, 1989, by GMIC. At the expiration of the ten-day period from the date of mailing, pursuant to the power of attorney provision of the agreement, GMIC mailed a notice of cancellation on behalf of Gardner to Georgia Mutual. Gardner was

mailed a notice of cancellation that same date, which was identified by the "PORS" list of notices of cancellation maintained by GMIC and signed by the employee who personally mailed them, and to which was attached a United States Postal Service certificate of bulk mailing. The policy of insurance with Georgia Mutual was canceled effective March 2, 1989, pursuant to the provisions of the premium finance agreement.

Following the collision on March 12, 1989, in which the parents of six minor children were killed, the children through their guardian and administratrix of the estate placed a demand on Georgia Mutual for coverage when Gardner, who did not know of the cancellation, told her the policy was in effect. Admitting that the value of the lives of the deceased parents exceeded the policy limits, Georgia Mutual filed for declaratory judgment. All parties moved for summary judgment, which was granted against Georgia Mutual when the court found that GMIC had not properly canceled the policy on behalf of Gardner because it did not obtain a receipt from the United States Postal Service as required by OCGA § 33-22-13 (c) when it mailed the notice of intent to cancel to Gardner. *Held*:

OCGA § 33-22-13 provides in pertinent part as follows:

"(a) When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the premium finance company unless the cancellation is effectuated *in accordance with this Code section.*

"(b) Not less than ten days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten-day period. A copy of said notice shall also be sent to the insurance agent or insurance broker indicated on the premium finance agreement.

"(c) After expiration of such ten-day period, the premium finance company may thereafter in the name of the insured cancel such insurance contract or contracts by mailing or delivering to the insurer a notice of cancellation; and the insurance contract shall be canceled as if the notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company, when mailing or delivering notice to the insurance company to cancel the policy, shall simultaneously mail notice to the insured notifying him of the action taken. Such notice to the insured shall contain the date and time the policy is to be canceled, which date shall not be prior to the date of mailing of such notice, and shall inform the insured that any payment received after the mailing or delivery of notice to the insurance company to cancel the policy will not reinstate the policy. The notice may

contain information to the effect that the premium finance company will make a request to the insurance company to reinstate the policy. Language sufficiently clear and specific so that a person of average intelligence can understand the action being taken by the premium finance company shall be used. The notice to the insured *required by this Code section* shall be mailed to the last address of record of the insured and shall be dispatched by at least first-class mail and receiving the receipt provided by the United States Postal Service or such other evidence of mailing as prescribed or accepted by the United States Postal Service.

"(d) All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply *where cancellation is effected under this Code section. . . ."* (Emphasis supplied.)

The appellees contended, and the trial court agreed, that the policy was not canceled in accordance with the law because only the notice of cancellation was supported by the required proof of mailing by the United States Postal Service, whereas OCGA § 33-22-13 mandates proof of mailing for the notice of intent to cancel as well, which was not obtained. Georgia Mutual argued on its motion for summary judgment, and now on appeal, that the notice required under OCGA § 33-22-13 (c) is limited to that subsection only and does not apply to OCGA § 33-22-13 in its entirety, so that it was in compliance with the statute. However, the cases upon which it relies in support of this position are inapposite: either they do not involve a premium finance agreement governed by OCGA § 33-22-13, or there was no denial that the required proof of mailing procedures was complied with, only that the insured failed to receive the notice. See, e.g., *State Farm &c. Ins. Co. v. Harris*, 177 Ga. App. 826 (341 SE2d 472) (1986).

" '[I]n construing any section of the Code, we must treat it as a single statute forming one homogeneous and consistent body of laws, and each Code section is to be considered in explaining and elucidating every other part of the common system to which it belongs.' [Cits.]" *Huntsinger v. State*, 200 Ga. 127, 130 (1) (36 SE2d 92) (1945). "All analysis must begin with the statutory language itself. [Cit.]" *Blanchard v. Blanchard*, 261 Ga. 11, 12 (401 SE2d 714) (1991). " 'Statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. (Cit.)' *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987)." *Georgia Public Svc. Comm. v. Charles H. Turner, Inc.*, 200 Ga. App. 144, 145 (1) (407 SE2d 113) (1991). " 'In the absence of words of limitation, words in a statute should be given "their ordinary and everyday meaning." [Cit.]' [Cits.]" *Management*

*&c. Group/Southeast v. United &c. Employee Programs*, 194 Ga. App. 99, 101 (2), 102 (389 SE2d 525) (1989).

The trial court found here that since the ordinary interpretation of the words "this Code section" includes the entire Code section and not just the subsection in which the phrase appears, the notice required under the statute applies to all subsections of OCGA § 33-22-13 and is not restricted solely to subsection (c). We agree, noting as did the trial court, that there are at least seven statutes codified under Title 33 which mention requirements of specific subsections within the context of the rest of the statute. OCGA § 33-22-13 refers to "this Code section" in three of its four subsections, whereas OCGA § 33-22-14 (b) (4), dealing with the disposition of unearned premiums upon cancellation of financed insurance contracts, specifies that the failure to tender any unearned premium "as prescribed in paragraph (3) of this subsection shall be subject to the penalties prescribed in paragraph (3) of subsection (c) of [OCGA §] 33-24-44." OCGA § 33-22-14 (c) then states that failing to refund any surplus payments or furnish reports requested "under subsection (b) of this Code section shall not invalidate a notice of cancellation given in accordance with this chapter."

The legislation consistently refers to the particular subsection when the topic is limited thereto, so when the statute alludes to "this Code section" it should be construed to apply to all the subsections contained therein. Thus, since the language "notice to the insured required by this Code section" is not restricted to just notice of cancellation under subsection (c), it most logically means notice under *any* provision of OCGA § 33-22-13. Subsection (a) mandates that the policy is not canceled if the cancellation is not done in accordance with "this Code section." The statutory cancellation by a premium finance company involves a two-step process whereby the finance company is first required to notify the insured of the finance company's intent to cancel for nonpayment of the premiums and the insured is given a ten-day period to cure the default; then if the insured does not pay he must be notified that the company has elected to cancel the policy. There is no justifiable reason for the statute to require the mailing of notice to be shown by a proper receipt issued by the United States Postal Service after the finance company has elected to cancel the policy and it is too late for the insured to cure the default, and not require it for the notice of intent to cancel which is an integral part of the rights of the insured under the statute.

"We thus come to the well-established position of the insurance company in the present posture of the case: as the movant for summary judgment its supporting papers are construed most strongly against it [cit.]; 'the language of the statute must be strictly construed' [cit.]; and the 'company has the burden of proving strict com-

pliance with the cancellation provisions . . . (and) any ambiguities of the notice must be resolved in favor of the insured. . . .' [Cit.]" *Freeman v. Government &c. Ins. Co.*, 151 Ga. App. 161, 163 (259 SE2d 165) (1979). Under this standard of review, we find it abundantly clear that the notice required by OCGA § 33-22-13 applies to all subsections of the statute and is not limited to subsection (c) alone; and since proper notice was not given of the intent to cancel, the cancellation was not effectuated in accordance with the statute. It follows that the trial court correctly granted summary judgment in favor of the appellees.

*Judgment affirmed. Sognier, C. J., and Cooper, J., concur.*

DECIDED SEPTEMBER 11, 1992.

*Smith, Gilliam & Williams, Steven P. Gilliam, Catherine H. Hicks, Bradley J. Patten,* for appellant.

*Abbott & Abbott, Anthony H. Abbott, Eichholz & Associates, Benjamin S. Eichholz,* for appellees.