A00A2402. JONES et al. v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY et al.
(546 SE2d 791)

BLACKBURN, Chief Judge.

After receiving a jury verdict in her favor against an unidentified motorist who injured her, Virginia H. Jones appeals the trial court's order finding that Georgia Farm Bureau Mutual Insurance Company, Cotton States Mutual Insurance Company, and Allstate Insurance Company were liable to her for only the minimum amount of uninsured motorist ("UM") coverage under OCGA § 33-7-11, on individual and separate policies issued by each insurer.[1] Jones contends that, because she never specifically rejected "excess" UM coverage in writing prior to the accident, she retains the option to acquire excess coverage following the accident, despite the fact that the policies involved provide for only minimum coverage. For the reasons set forth below, we disagree and affirm the trial court.

---

[1] Jones brings this action through her guardians, Joey Philip Jones and Regina Nicole Jones.

The record shows that Jones was injured when an unidentified motorist referred to as "John Doe" crashed into another car in which Jones was a passenger. Jones subsequently brought suit against "John Doe," and a jury awarded her a judgment of $4.5 million.

At the time of the accident, Jones was an insured under policies issued by Georgia Farm Bureau, Cotton States, and Allstate. Under the Georgia Farm Bureau policy which was established by Jones on February 14, 1994, Jones was the original named insured. Two policies issued by Cotton States covered the accident; one policy, initially issued in 1987 to Jones' husband as the named insured, was changed at the time of Jones' husband's death to list her as the named insured, and, on the other policy, Jones was an original named insured along with her husband. Finally, the Allstate policy in question was held by Jones' mother, who was the named insured, and this policy covered the vehicle in which Jones was a passenger at the time of the wreck.

All of the policies provided for the minimum amount of UM coverage under OCGA § 33-7-11. Prior to the verdict in her case against "John Doe," Jones applied to each of the insurers for excess UM coverage in the amount of $10,000 over and above the minimum coverage amounts, and her requests were denied. The trial court subsequently entered a verdict against each of the insurers for the minimum amount of UM coverage, and Jones appeals this order.

Jones contends that, pursuant to OCGA § 33-7-11, she retained the right to receive excess UM coverage after her accident because she had not previously executed a written rejection of such excess coverage. Because the statute does not require an insurer to obtain a written rejection of excess coverage, only minimum coverage, we disagree.

OCGA § 33-7-11 (a) (1)[2] requires insurance companies to offer its insureds minimum UM coverage at the creation of a policy. This statute provides:

> (a) (1) No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured all sums which [she] shall be legally entitled to

---

[2] The statutory provisions cited here are those in effect at the time of the accident herein which are applicable to this case. Effective January 1, 2001, the minimum coverage provided for under the statute was increased to $25,000, $50,000, and $25,000, respectively under OCGA § 33-7-11 (a) (1) (A).

recover as damages from the owner or operator of an uninsured motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be: (A) Not less than $15,000.00 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, $30,000.00 because of bodily injury to or death of two or more persons in any one accident, and $10,000.00 because of injury to or destruction of property of the insured; (B) Not greater than the limits of liability because of bodily injury to or death of one person in any one accident and of two or more persons in any one accident, and because of injury to or destruction of property of the insured which is contained in the insured's personal coverage in the automobile liability policy or motor vehicle liability policy issued by the insurer to the insured.

Although an insurer is required to offer UM coverage initially, an insured is not required by the statute to carry UM coverage. OCGA § 33-7-11 (a) (3) states:

The coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the minimum coverage in writing. However, the insurer shall not be required to issue any coverage for any amount greater than the minimum coverage unless the insured shall request in writing such higher limits. The coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

As we have previously explained:

When the two Code sections are read together, the statutory scheme is evident, and it contains two primary precepts. First, an insurer must provide UM coverage to the insured upon *creation* of the insurance contract. Second, once an insured rejects UM coverage in writing, the insurer is under no continuing duty to offer UM coverage each time *the same policy is renewed.*

(Emphasis in original.) *Merastar Ins. Co. v. Wheat.*[3]
At the outset, the statute, on its face, does not require an insurer

---

[3] *Merastar Ins. Co. v. Wheat*, 220 Ga. App. 695, 697 (1) (469 SE2d 882) (1996).

to obtain a written rejection of excess coverage, only minimum coverage. OCGA § 33-7-11 (a) (3) explicitly provides: "[T]he insurer shall not be required to issue any coverage for any amount greater than the minimum coverage unless the insured shall request in writing such higher limits." There is no indication whatsoever that an insured retains a right to excess coverage until he or she rejects it. If the legislature meant for the rejection feature to apply equally to minimum coverage and excess coverage, it would have said so explicitly. Therefore, based upon the plain wording of the statute, an insured does not automatically retain the right to seek excess coverage merely because he or she never rejected such coverage previously.

Any other interpretation cuts against the purpose behind the statute involved here. An insured can elect to carry: (1) no UM coverage; (2) minimum UM coverage; or (3) UM coverage in an amount greater than the minimum coverage and equal to or less than the regular liability limits under the policy. If an insured chooses no coverage, an insurer must obtain a rejection of minimum UM coverage in writing, or, by default, the insured will receive minimum coverage. As a matter of public policy, this written rejection is required: (1) to be certain that insurers notify insureds about the UM coverage available to them and (2) to encourage, without requiring, drivers to elect to carry the *minimum* amount of UM coverage.

On the other hand, if the insured wishes to receive coverage in excess of the statutory minimum, he or she is required to request such excess coverage in writing. The statute does not require the insurer to obtain a written rejection of such excess coverage, because it was designed to foster a statutorily determined minimum while balancing the burdens and costs of implementing the UM coverage election process equally between the insurer and the insured. If the insurer were required to obtain a written rejection of excess coverage, undue expenses would be placed on the insurer, which would ultimately be passed on to the insured as increased premiums. Accordingly, the statute places the burden on the insured to request additional protection in writing.

> [Any other result] would simply create a potential windfall for insureds. . . . No benefit or protection would inure to the insureds under . . . a requirement [that an insurer receive a written rejection of excess coverage after the creation of the policy] as [the insureds] would have already made their UM coverage choice after having been informed of their options. A negative impact would be felt by the insureds by such a requirement as the additional cost would

be passed through to them in the form of increased premiums.

*Merastar Ins. Co. v. Wheat*, supra.

Therefore, for the reasons discussed above, the trial court appropriately determined that Jones was not entitled to excess UM coverage from the insurers involved in this case.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED MARCH 2, 2001.

_ *David G. Kopp, Jesse Copelan, Jr.*, for appellants.

*Spivey, Carlton & Edenfield, J. Franklin Edenfield, B. Carl Buice, John H. Bradley, Robert S. Slocumb*, for appellees.