A05A0899. AKA MANAGEMENT, INC. et al. v. BRANCH BANKING & TRUST COMPANY.
(621 SE2d 576)

MIKELL, Judge.

Branch Banking & Trust Company (the "Bank") filed an action against AKA Management, Inc. ("AKA"), Michael E. Craig, and Abdul Kaba (hereinafter collectively referred to as the "appellants"), alleging that AKA defaulted on two promissory notes and that Kaba and Craig, as guarantors of the notes, failed to pay AKA's indebtedness. AKA, Kaba, and Craig counterclaimed, alleging that the Bank sold AKA's equipment for a commercially unreasonable price. On appeal,

the appellants challenge the trial court's grant of summary judgment to the Bank. We affirm the judgment as to appellants Craig and AKA but reverse as to appellant Kaba.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence shows that appellant Kaba owned and operated AKA Management, Inc. d/b/a S & L Laundry Corporation ("AKA"), a dry cleaning business. AKA executed a promissory note in the original amount of $250,000 in favor of the Bank. In connection therewith, Kaba executed a Georgia Security Deed and Security Agreement, which was secured by AKA's assets, including equipment. Both Kaba and Craig, who agreed to invest in Kaba's business, executed a guaranty in favor of the Bank, guaranteeing timely payment of AKA's note.

Under the terms of the promissory note, the Bank was authorized to declare the note in default if payment were not made in a timely manner or "in the event the Bank should otherwise deem itself, its security interest, or any collateral unsafe or insecure; or should the Bank in good faith believe that the prospect of payment or other performance is impaired." The note also provided that in the event of a default, the Bank, at its option, was authorized to demand the immediate payment of all principal and interest remaining due and that AKA was obligated to pay all costs of collection, including court costs and attorney fees, if the note were placed with an attorney for collection.

AKA executed a second promissory note in favor of the Bank in the original principal amount of $25,000 on or about July 6, 2002. This note was also secured by AKA's assets, including equipment, pursuant to a security agreement with the Bank. Kaba and Craig again signed unconditional guarantees promising the payment of this second note. The terms of the second note pertaining to default and collection costs were identical to those of the first note.

On April 3, 2003, the Gwinnett County State Court evicted Kaba and S & L Laundry Corporation from their premises for nonpayment of rent and issued a writ of possession returning the premises to

---

[1] (Citations omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

AKA's landlord, Peach City, LLLP (the "landlord"), and commanding the immediate removal of all of AKA's property. The landlord informed the Bank that the equipment would be removed and thrown out onto the street.

On April 14, 2003, the Bank forwarded a letter to Kaba and Craig, informing them that the notes were in default because: (1) it deemed itself and its collateral insecure in light of the impending removal of the equipment from the premises by the landlord; and (2) it believed the prospect of payment or other performance was impaired. The letter gave Kaba and Craig ten days to cure the default, pursuant to OCGA § 13-1-11, before the provisions related to collection and attorney fees would be enforced. On April 16, 2003, Craig signed a "Waiver and Surrender," which authorized the Bank to take possession of the property and to dispose of it without prior notice to him, including through any commercially reasonable disposition it desired. Thereafter, the Bank negotiated with the landlord to leave the equipment on the premises pending its sale.

Dianne Clancy, the Bank's vice-president, testified that she contacted other dry cleaning professionals and provided them with a list of the equipment that was for sale and asked that they publicize the information and instruct potential purchasers to submit bids to the Bank. Clancy and William Hawkins, who was the Bank's special assets officer, received numerous calls from prospective purchasers. Kaba introduced Mac Patel to Clancy and represented that Patel would pay $100,000 for the equipment. Patel, who owned several dry cleaning stores, testified that he never indicated that he would pay that amount for the equipment.

The Bank received two bids for the property: one from Patel in the amount of $50,000, and the second from Aziz Haji in the amount of $45,000. According to Hawkins, Haji refused to increase the price further because he could purchase the equipment for less from another seller. Patel purchased the equipment on August 29, 2003, for $50,000.

The Bank applied the $50,000 to the outstanding balances on the promissory notes, but deficiencies remained as of March 19, 2004. Under the first note, the remaining principal balance was $148,805.21, the accrued interest was $25,419.91, and interest continued to accrue at $34.51 per day. Under the second note, the principal balance remaining was $25,000, the accrued interest was $3,189.94, and interest continued to accrue at $4.34 per day.[2] Under both notes, attorney fees would be calculated pursuant to OCGA § 13-1-11 at a

---

[2] Both notes provided that interest would accrue daily from the sale until the date of judgment at the default rate of five percent over the prime interest rate.

rate of fifteen percent of the first $500 of principal and interest and ten percent of the remaining principal and interest.

After Kaba and Craig failed to cure the deficiency, the Bank filed suit on September 19, 2003. On November 10, the appellants answered and asserted a counterclaim, alleging that the Bank engaged in a commercially unreasonable sale. Kaba filed for protection under Chapter 7 of the United States Bankruptcy Code on February 4, 2004. The Bank filed its motion for summary judgment on March 5, 2004. Kaba was discharged from bankruptcy on May 21, 2004, and the trial court granted the Bank summary judgment on July 21, 2004.

1. In their first enumeration of error, appellants assert a two-prong argument. First, they maintain that the trial court erred by entering judgment against Kaba after he had been granted a discharge in bankruptcy. Second, since Kaba was the only Gwinnett County defendant, the trial court lacked jurisdiction over the remaining defendants to enter judgment against them.

(a) The parties filed a stipulation after the entry of judgment in which they agreed that Kaba was not a proper party to the action after the date upon which he was discharged in his bankruptcy action, May 21, 2004, and that the trial court could not enter a judgment against him. Consequently, we reverse the grant of summary judgment as to Kaba and direct the trial court to modify the order to so reflect.

(b) As to the claim that the trial court lacked jurisdiction to enter judgment against the remaining defendants, however, we find the claim fails because the defendants waived their venue defense.

"A party may waive the defense of improper venue by his conduct during the course of litigation or by failing to elicit a ruling on the venue issue before entry of judgment."[3] Kaba was discharged through bankruptcy on May 21, 2004, two months before the trial court granted summary judgment to the Bank. During that time, Craig and AKA did not file a motion to dismiss or otherwise raise the improper venue defense. By failing to do so prior to the entry of the trial court's order, they waived their venue defense.[4]

2. In their next enumerated error, appellants again assert a two-prong argument. They maintain that the trial court erred in ruling, as a matter of law, that the Bank was entitled to a deficiency judgment and that no genuine issues of fact remained as to the commercial reasonableness of the Bank's sale of the equipment.

---

[3] (Citation omitted.) *Hoffman v. Fletcher*, 244 Ga. App. 506, 509 (3) (535 SE2d 849) (2000).

[4] *Taylor v. Career Concepts*, 184 Ga. App. 551, 553 (1) (362 SE2d 128) (1987). Cf. *Timberlake Grocery Co. of Macon v. Cartwright*, 146 Ga. App. 746, 747-748 (247 SE2d 567) (1978) (trial court granted nonresident defendants' motion to dismiss after venue became improper against them once resident defendants were dismissed).

(a) Appellants contend that the Bank was not entitled to a deficiency judgment as a matter of law because the question of whether it exercised good faith in accelerating the debt was a question for the jury. However, appellants did not raise this argument below.[5] "We are limited to considering only those grounds raised and ruled on below by the trial court and may not consider a basis for appeal not presented at the trial level."[6] Therefore, this argument is waived.

(b) Appellants argue that the trial court erred in concluding, as a matter of a law, that the sale of the equipment was commercially reasonable. In support of their position, they offered the affidavit of Craig, their discovery responses, and excerpts of Clancy's and Hawkins's deposition testimony. We find no error.

In an action for a deficiency judgment, the creditor may dispose of the debtor's collateral.[7] However, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."[8] Pursuant to OCGA § 11-9-627 (b) (1)-(3), a disposition is commercially reasonable if it is made "[i]n the usual manner on any recognized market; . . . [a]t the price current in any recognized market at the time of the disposition; or . . . [o]therwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." Where the reasonableness of the sale is challenged, the creditor must prove its commercial reasonableness, which includes showing that the resale price reflected the fair and reasonable value of the collateral.[9] However,

> [t]he fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.[10]

---

[5] In its order, the trial court referred to the hearing on June 28, 2004, however, no transcript of that hearing is included in the record. "It is well settled that the burden is on the party alleging error to show it affirmatively by the record and when the burden is not met, the judgment complained of is assumed to be correct and must be affirmed." (Citation and footnote omitted.) *Rice v. Baker*, 264 Ga. App. 704 (1) (592 SE2d 186) (2003).

[6] (Punctuation and footnote omitted.) *Colonial Ins. Co. of Ca. v. Progressive Cas. Ins. Co.*, 252 Ga. App. 391, 393 (1) (556 SE2d 486) (2001).

[7] See OCGA § 11-9-610 (a).

[8] OCGA § 11-9-610 (b).

[9] See *Wagner v. Ford Motor Credit Co.*, 155 Ga. App. 729, 730-731 (3) (272 SE2d 500) (1980).

[10] OCGA § 11-9-627 (a).

Ordinarily, the issue of whether a sale was commercially reasonable is a question of fact. But it "may be determined as a matter of law where the creditor offers prima facie, uncontradicted evidence that the sale was reasonable. To avert summary judgment, the debtor must support his challenge to the sale by presenting evidence of specific facts to show the existence of a genuine issue for trial."[11] The record shows that the Bank made its prima facie showing that the sale was commercially reasonable but does not show that appellants satisfied their burden to rebut the Bank's showing.

The Bank utilized professionals in the industry to assist in the sale of the equipment, and it did not rush to dispose of the equipment. In fact, the Bank ultimately sold the equipment to the person whom the appellants contended would most likely tender the highest bid for the equipment. In support of their argument that the sale was unreasonable, appellants offer the affidavit and testimony of Craig. Craig averred that the depreciated value of the equipment was $173,611.88 on April 18, 2003; that Clancy told him that the value of the collateral exceeded the balance on the loan; and that the Bank had indicated that the best offer that Clancy received from the six companies from whom she requested bids was $85,000. He also testified that Clancy was not qualified to sell the property, that the Bank's bidding process was not standard, and that the value of the equipment was too low.

"Direct testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article in question but may testify as to its value if he has had an opportunity for forming a correct opinion."[12] Nonetheless, in order for this opinion evidence to have probative value, it "must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property in question or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion."[13] The record shows that Craig never owned or operated a dry cleaning business, or purchased, sold, or appraised dry cleaning equipment. Craig's career was focused on information technology and in the course thereof, he had purchased and sold computer equipment. His assessment of the depreciated value of the dry cleaning equipment was based upon the formula he uses to depreciate the value of computer equipment. His knowledge as to the purchase price of the equipment was based solely upon what

---

[11] (Citation omitted.) *Southeast Recovery Svcs. v. Northen*, 255 Ga. App. 516, 519 (1) (565 SE2d 861) (2002).

[12] OCGA § 24-9-66.

[13] (Citations and punctuation omitted.) *Bradford v. City of Albany*, 242 Ga. App. 477, 478 (529 SE2d 906) (2000).

he was told by Kaba. Therefore, we agree with the trial court's conclusion that Craig's opinion lacked probative value and was inadmissible, as it amounted to nothing more than an unsupported conclusion or guess.[14] Consequently, appellants failed to rebut the Bank's prima facie showing that the sale was commercially reasonable, and the trial court properly granted summary judgment on this ground.

3. In their last error, appellants contend that the amount awarded by the trial court was contrary to the evidence. We agree.

After the trial court entered its order in favor of the Bank, the parties stipulated that the principal amount owed as to the first note was $148,805.21, rather than $198,805.21, the amount stated in the trial court's order. Accordingly, the judgment is affirmed on condition that it be reduced by $50,000 to reflect the amount agreed to by the parties as the correct sum.

Therefore, judgment is reversed as to appellant Kaba, affirmed on condition as to the remaining appellants, and the case is remanded for modification of the judgment.

*Judgment affirmed in part and reversed in part and case remanded with direction. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 27, 2005 — 

*Weinstock & Scavo, Richard J. Capriola, Prince A. Brumfield, Jr.,* for appellants.
*Greenberg & Traurig, Charles M. Smith,* for appellee.