A06A0703. McKINNON v. PROGRESSIVE BAYSIDE
INSURANCE COMPANY.
(629 SE2d 100)

MIKELL, Judge.

Wilma E. McKinnon was injured on June 7, 2003, in an automobile collision. She sued the other driver, James Matthew Taylor, for damages, and served her uninsured motorist ("UM") insurance provider, Progressive Bayside Insurance Company, with a copy of her complaint. Progressive moved for summary judgment to establish the limits of its UM insurance coverage, which Progressive claimed to be $25,000 per person and $50,000 per accident ("$25,000/$50,000"). McKinnon opposed the motion, claiming that the policy's UM benefits amounted to $50,000 per person and $100,000 per accident ("$50,000/$100,000"). The trial court granted Progressive's motion for summary judgment. McKinnon appeals, and we affirm for the reasons set forth below.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.

OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

The record shows that Progressive's policy was originally issued on March 18, 2000, effective through March 18, 2001, with stated limits of $25,000/$50,000 for bodily injury liability insurance and $15,000/$30,000 for UM insurance. The policy was renewed March 18, 2001, through March 18, 2002, with UM insurance coverage increased to $25,000/$50,000. On March 18, 2002, the policy was renewed through March 18, 2003, with its bodily injury liability insurance limits increased to $50,000/$100,000 and its UM insurance coverage remaining at $25,000/$50,000. These limits remained unchanged when the policy was renewed on March 21, 2003, through March 21, 2004. The automobile collision giving rise to this suit occurred on June 7, 2003. There is no evidence that McKinnon made any election as to her UM coverage, either to reject UM coverage, choose minimum UM coverage, or to choose UM coverage in any amount greater than the minimum coverage.

McKinnon argues that because there is no evidence that she affirmatively chose UM coverage in an amount less than the policy's bodily injury liability coverage, Progressive is required to provide UM coverage in an amount equal to the policy's $50,000/$100,000 bodily injury liability coverage. We disagree.

As amended in 2001,[1] OCGA § 33-7-11 (a) (1) provides that no automobile insurance liability policy may be issued in this state unless it contains provisions for UM coverage[2] which at the option of the insured shall be (i) not less than $25,000 per person and $50,000 per accident,[3] or (ii) equal to the policy's bodily injury liability insurance coverage, if higher.[4] The statute further provides that "[i]n

---

[1] Ga. L. 2001, p. 1228.

[2] However, this coverage "shall not be applicable where any insured named in the policy shall reject the coverage in writing." OCGA § 33-7-11 (a) (3).

[3] "Not less than $25,000.00 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, $50,000.00 because of bodily injury to or death of two or more persons in any one accident." OCGA § 33-7-11 (a) (1) (A).

[4] Equal to the limits of liability because of bodily injury to or death of one person in any one accident and of two or more persons in any one accident, and because of injury to or destruction of property of the insured which is contained in the insured's personal coverage in the automobile liability policy or motor vehicle liability policy issued by the insurer to the insured if those limits of liability exceed the limits of liability set forth in subparagraph (A) of this paragraph of this Code section.
OCGA § 33-7-11 (a) (1) (B).

any event, the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability." OCGA § 33-7-11 (a) (1) (B).

We have previously held that with the 2001 amendment to the UM statute, the General Assembly intended "the liability limits in the insured's underlying policy [to be] the default provision when the insured elects UM coverage unless the insured affirmatively chooses UM coverage in a lesser amount." *Tice v. American Employers' Ins. Co.*, 275 Ga. App. 125, 127-128 (619 SE2d 797) (2005). Thus, McKinnon contends, she is entitled to the higher default coverage in the absence of evidence that she affirmatively chose UM coverage in a lesser amount. The flaw in McKinnon's argument is that her policy is a renewal policy. "The amount of coverage need not be increased in a *renewal policy* from the amount shown on the declarations page for coverage existing prior to July 1, 2001. The amount of coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued." (Emphasis supplied.) OCGA § 33-7-11 (a) (3). On June 30, 2001, Progressive's policy provided McKinnon with UM coverage of $25,000/$50,000. In light of the plain language of OCGA § 33-7-11 (a) (3), Progressive was under no obligation to increase the limits of its UM coverage to the amount of the policy's bodily injury liability coverage when the policy was subsequently renewed.

*Tice*, supra, does not support McKinnon's arguments. In that decision, we rejected the Tices' argument that their insurer was required to automatically increase the minimum UM liability insurance in their renewal policies to the amount of the policies' underlying bodily injury liability coverage. See id. at 127-128. McKinnon claims we only reached this result because Michael Tice elected minimum UM coverage in 1996. Id. at 125. However, even if McKinnon did not affirmatively elect minimum UM coverage but made no election of any kind, minimum coverage was the default coverage when Progressive issued McKinnon's policy in 2000. See *Jones v. Ga. Farm &c. Ins. Co.*, 248 Ga. App. 394, 397 (546 SE2d 791) (2001) ("[i]f an insured chooses no coverage, an insurer must obtain a rejection of minimum UM coverage in writing, or, by default, the insured will receive minimum coverage"). McKinnon does not contend that she elected UM coverage for an amount greater than the statutory minimum, and thus she is in no different position than the Tices in that she was only entitled to the minimum UM coverage at the time her policy was issued, and her policy was then renewed following the 2001 amendment to OCGA § 33-7-11. OCGA § 33-7-11 (a) (3) provides that an insurer is not required to increase UM coverage in renewal policies for coverage existing prior to July 1, 2001, and this provision does not

provide for exception or notification. Accordingly, the trial court did not err in granting summary judgment to Progressive.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 23, 2006 —

*Savage, Turner, Pinson & Karsman, Ashleigh R. Madison,* for appellant.

*Young, Thagard, Hoffman, Smith & Lawrence, Matthew R. Lawrence,* for appellee.