## A06A1501. ABROHAMS et al. v. ATLANTIC MUTUAL INSURANCE AGENCY.
(638 SE2d 330)

RUFFIN, Chief Judge.

Richard Abrohams and his minor son were injured in a motor vehicle collision with an underinsured motorist. After the collision, the Abrohams sought underinsured motorist ("UM") benefits from Atlantic Mutual for injuries under both an automobile policy and an umbrella policy. Although the UM coverage provided by the automobile policy was not in dispute, Atlantic Mutual argued that the umbrella policy did not provide UM coverage. Atlantic Mutual filed a declaratory judgment action to resolve whether it was required to provide UM benefits to the Abrohams under their umbrella policy pursuant to OCGA § 33-7-11. Atlantic Mutual further maintained that even if the trial court concluded that OCGA § 33-7-11 did require insurers to provide UM coverage in umbrella policies, the statute did not apply in this case because the Abrohams' policy was a renewal policy. The Abrohams disagreed and filed a counterclaim for declaratory judgment. The trial court granted Atlantic Mutual's motion for summary judgment and denied the Abrohams' motion for summary judgment. The Abrohams appealed the trial court's ruling. For reasons that follow, we reverse and remand.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[1] Our review of a grant of summary judgment is de novo, and we review the evidence and all reasonable conclusions and inferences drawn therefrom in a light most favorable to the nonmovant.[2]

The undisputed facts establish that Richard Abrohams and his minor son, David, were injured in an automobile collision on December 28, 2002. David Abrohams' injuries are permanent in nature, and his resulting expenses currently total $250,000. The parties specifically stipulated that liability for the collision rested solely with the driver of the vehicle that collided with the Abrohams.

At the time of the collision, Richard and Barbara Abrohams were the named insureds under an Atlantic Mutual insurance policy comprised of a homeowners policy, an automobile liability policy, a valuables policy, and a personal umbrella policy. Richard and Barbara Abrohams' claims arising out of the collision were resolved by a

---

[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] See *AKA Mgmt. v. Branch Banking & Trust Co.*, 275 Ga. App. 615, 616 (621 SE2d 576) (2005).

settlement with the at-fault driver's insurance company and a portion of the Abrohams' UM coverage under their automobile policy. The parties stipulated that the value of David Abrohams' claim resulting from the collision will exceed $1,450,000. Although David has received or will receive benefits from the at-fault driver's insurance policy and proceeds from the UM coverage contained in his parents' automobile liability policy, the value of his claim exceeds the limits of those policies.[3]

Thus, the Abrohams sought UM benefits from Atlantic Mutual under their umbrella policy. The umbrella policy provided $1 million in excess liability coverage and covered the Abrohams' residence and two vehicles. The umbrella policy specifically excluded UM coverage, stating that "[w]e won't pay for Uninsured/Underinsured Motorists coverage or No-Fault benefits unless such coverage is specifically shown on the Declarations Page as an Umbrella Coverage." The Declarations Page does not list "Uninsured/Underinsured Motorists Coverage" as an Umbrella Coverage. Atlantic Mutual never offered UM coverage as part of the Abrohams' umbrella policy, and the Abrohams never rejected such coverage.

1. As amended in 2001,[4] OCGA § 33-7-11 (a) (1) provides that no "automobile liability policy or motor vehicle liability policy" may be issued in this state unless it contains provisions for UM coverage which, at the option of the insured, shall be (i) not less than $25,000 per person and $50,000 per accident, or (ii) equal to the policy's bodily injury liability insurance coverage, if higher. The statute further provides that "the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability."[5] This coverage "shall not be applicable where any insured named in the policy shall reject the coverage in writing."[6]

The Abrohams maintain that the UM statute requires that an umbrella policy provide UM coverage in an amount greater than or equal to the amount of their liability coverage, unless the insured rejects UM coverage in writing. The Abrohams thus argue that they are entitled to $1 million in UM coverage under their umbrella policy because they were never offered, nor did they reject, such coverage. Atlantic Mutual contended, and the trial court agreed, that OCGA

---

[3] The Abrohams' automobile liability policy provided $500,000 in UM coverage. The at-fault driver's motor vehicle liability policy contained minimum limits, which would be $25,000 per person and $50,000 per accident, pursuant to OCGA § 33-7-11 (a) (1) (A).

[4] Ga. L. 2001, p. 1228.

[5] OCGA § 33-7-11 (a) (1) (B).

[6] OCGA § 33-7-11 (a) (3).

§ 33-7-11 does not apply to umbrella policies and, because the Abrahams' umbrella policy specifically excluded UM coverage, the Abrahams did not have UM coverage under that policy at the time of the collision.

Thus, the resolution of this case turns on the narrow issue of whether an umbrella policy is subject to the requirements of OCGA § 33-7-11. "Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose."[7] Moreover, statutes

> should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. In the absence of words of limitation, words in a statute should be given their ordinary and everyday meaning.[8]

"In construing a statute, the cardinal rule is to glean the intent of the legislature in the light of the legislative intent as found in the statute as a whole."[9]

Although Georgia's UM statute does not define "automobile liability" or "motor vehicle liability" policies,[10] Chapter 7 of the Georgia Insurance Code defines "vehicle insurance" as

> insurance against loss of or damage to any land vehicle or aircraft, any draft or riding animal, or to property while contained therein or thereon or being loaded or unloaded therein or therefrom from any hazard or cause, and against any loss, liability, or expense resulting from or incident to ownership, maintenance, or use of any such vehicle, aircraft, or animal, together with insurance against accidental death or accidental injury to individuals, including the named insured, while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if such insurance is issued as a part of insurance on the vehicle, aircraft, or draft or riding animal; and provisions of medical, hospital, surgical,

---

[7] (Citations omitted.) *Smith v. Commercial Union Assurance Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980).

[8] (Citations and punctuation omitted.) *Ga. Mut. Ins. Co. v. Gardner*, 205 Ga. App. 458, 460 (422 SE2d 324) (1992).

[9] (Citations, punctuation and emphasis omitted.) *Ga. Emission Testing Co. v. Jackson*, 259 Ga. App. 250, 252 (576 SE2d 642) (2003).

[10] OCGA § 33-7-11 (a) (1).

and disability benefits to injured persons, funeral and death benefits to dependents, beneficiaries or personal representatives of persons killed, irrespective of legal liability of the insured, when issued as an incidental coverage with or supplemental to liability insurance.[11]

Although OCGA § 33-7-11 does not specify that it covers umbrella or excess liability statutes, neither does it exclude such policies.[12] More importantly, however, the language of the statute does not limit its application to primary policies, and Atlantic Mutual points to nothing in the Insurance Code that draws any distinction between primary versus excess coverage policies.[13] Had the legislature intended to limit the application of OCGA § 33-7-11 to primary policies only, as argued by Atlantic Mutual, it could easily have done so.

However, Georgia's UM statute

states in plain language that *every* policy issued or delivered in this state shall undertake to pay the insured all sums which he is legally entitled to recover from the owner or operator of an uninsured motor vehicle. *There are no exceptions or qualifications to this statutory requirement.*[14]

"The plain mandate of the statute is to provide payment for all sums which the insured is legally entitled to recover as damages from the uninsured motorist."[15] "The statute is designed to protect the insured as to his actual loss, within the limits of the policy or *policies* of which he is the beneficiary."[16]

To hold that umbrella and excess policies are exempt from the UM statute would contravene that intent. We see nothing in the statute suggesting that an umbrella or excess policy that provides automobile or motor vehicle liability insurance should be exempt from the requirements of the statute merely because it is not a primary policy or covers additional types of liability. There is nothing in the language to suggest that the legislature intended to limit the

---

[11] OCGA § 33-7-9.

[12] See OCGA § 33-7-11 (a) (1).

[13] Id.

[14] (Emphases supplied.) *St. Paul Fire & Marine Ins. Co. v. Goza*, 137 Ga. App. 581, 584 (1) (224 SE2d 429) (1976).

[15] (Punctuation omitted.) Id. at 583-584.

[16] (Punctuation omitted; emphasis supplied.) Id. at 584. The use of the plural term "policies" arguably suggests that the legislature intended the UM statute to apply to excess or umbrella liability policies.

amount of UM protection available to consumers — in fact, it specifically requires that, without a written waiver, all automobile policies provide UM coverage equal to the policies' overall liability limits.[17]

The Abrohams insist that this Court has already specifically decided that umbrella and excess liability policies are subject to Georgia's UM statute in *St. Paul Fire & Marine Ins. Co. v. Goza*.[18] Indeed, other jurisdictions have interpreted the *Goza* decision as holding that Georgia's UM statute applies to umbrella and excess policies.[19] Nevertheless, we believe that *Goza* is not so explicit, and that this particular matter is an issue of first impression in Georgia. The decisions from other jurisdictions are divided. Courts of some states with full coverage UM statutes have concluded that an umbrella policy must include UM coverage.[20] There are, however, courts in other states with full coverage UM statutes that have reached the opposite conclusion.[21]

Notwithstanding the decisions of other jurisdictions, given the clear purpose of OCGA § 33-7-11, we decline to create a judicial exemption for umbrella or excess policies, absent express direction from the legislature.[22] Thus, we necessarily conclude that umbrella and excess policies that provide motor vehicle or automobile liability coverage are subject to the requirements of OCGA § 33-7-11.

2. Atlantic Mutual further argues that even if this Court finds that OCGA § 33-7-11 does require umbrella and excess policies to provide UM coverage, summary judgment was proper because the Abrohams' policy was a renewal policy and therefore exempt from the UM statute. We disagree.

---

[17] OCGA § 33-7-11 (a) (1), (3).

[18] Supra.

[19] See, e.g., *Stoumen v. Public Svc. Mut. Ins. Co.*, 834 FSupp. 140, 142 (II) (E.D. Pa. 1993); *Hartbarger v. Country Mut. Ins. Co.*, 107 Ill. App.3d 391 (437 NE2d 691, 694) (1982).

[20] See, e.g., *Estate of Delume v. Allstate Ins. Co.*, 113 Nev. 414 (936 P2d 326) (1997); *Ormsbee v. Allstate Ins. Co.*, 176 Ariz. 109 (859 P2d 732) (1993); *House v. State Auto. Mut. Ins. Co.*, 44 Ohio App.3d 12 (540 NE2d 738) (1988); *Southern American Ins. Co. v. Dobson*, 441 S2d 1185 (La. 1983).

[21] See, e.g., *Kromer v. Reliance Ins. Co.*, 450 Pa. Super. 631 (677 A2d 1224) (1996); *Mass v. U. S. Fidelity and Guaranty Co.*, 222 Conn. 631 (610 A2d 1185) (1992); *United Svcs. Auto. Assn. v. Wilkinson*, 132 N.H. 439 (569 A2d 749) (1989).

[22] We note that the legislatures of several states with full coverage UM statutes similar to OCGA § 33-7-11 specifically amended their relevant statutes to exclude umbrella policies from UM coverage requirements. See, e.g., Ariz. Rev. Stat. § 20-259.01 (L); Kan. Stat. § 40-284 (a); Fla. Stat. § 627.727 (2). They did so after their respective appellate courts interpreted their UM statutes to include umbrella and excess policies. See *Ormsbee*, supra at 113 (III); *Bartee v. R.T.C. Transp.*, 245 Kan. 499, 515 (781 P2d 1084) (1989); *Aetna Cas. &c. Co. v. Green*, 327 S2d 65, 66 (Fla. App. 1976).

As amended in 2001,[23] OCGA § 33-7-11 (a) (3) provides, in pertinent part, that the

> amount of coverage need not be *increased* in a renewal policy from the amount shown on the declarations page for coverage existing prior to July 1, 2001. The amount of coverage need not be *increased* from the amounts shown on the declarations page on renewal once coverage is issued.[24]

The Abrohams' umbrella policy in effect at the time of the collision was a renewal policy of coverage which existed prior to July 1, 2001. However, the Abrohams had never been offered nor had they declined UM coverage as part of their umbrella policy, either before or after July 1, 2001.

Atlantic Mutual's reliance upon *Tice v. American Employers' Ins. Co.*[25] and *McKinnon v. Progressive Bayside Ins. Co.*[26] is misplaced. Neither *Tice* nor *McKinnon* supports Atlantic Mutual's position that an insurer is not required to offer UM coverage for renewal policies when the insurers were never offered UM coverage in the original policies existing prior to July 1, 2001. The plain language of OCGA § 33-7-11 (a) (3) simply "provides that an insurer is not required to *increase* UM coverage in renewal policies for coverage existing prior to July 1, 2001."[27] Thus, the renewal exception set forth in OCGA § 33-7-11 (a) (3) does not exempt the Abrohams' umbrella policy from UM requirements.[28]

3. The Abrohams' umbrella policy specifically excluded UM coverage. "Under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law."[29] However, provisions in insurance policies that conflict with the plain terms of Georgia's insurance statutes are illegal and of no effect.[30]

---

[23] Ga. L. 2001, p. 1228.

[24] (Emphases supplied.) OCGA § 33-7-11 (a) (3).

[25] 275 Ga. App. 125 (619 SE2d 797) (2005).

[26] 278 Ga. App. 429 (629 SE2d 100) (2006).

[27] (Emphasis supplied.) Id. at 431.

[28] However, because the Abrohams made no election of any kind regarding UM coverage, minimum coverage was the default coverage when Atlantic Mutual initially issued the Abrohams' policy. See id.; *Jones v. Ga. Farm &c. Ins. Co.*, 248 Ga. App. 394, 397 (546 SE2d 791) (2001).

[29] *Sorema North American Reinsurance Co. v. Johnson*, 258 Ga. App. 304, 306 (574 SE2d 377) (2003).

[30] See *Olukoya v. American Assn. of Cab Cos.*, 202 Ga. App. 251, 253 (2) (414 SE2d 275) (1991); *Travelers Indem. Co. v. Williams*, 119 Ga. App. 414, 417 (167 SE2d 174) (1969).

As explained in Division 1, supra, OCGA § 33-7-11 requires that insurers provide UM coverage in umbrella and excess policies that provide automobile and motor vehicle liability insurance. The provision in the Abrohams' umbrella policy, which specifically excluded UM coverage, was therefore void.[31]

For the foregoing reasons, the judgment below is reversed, and the case is remanded to the superior court for entry of judgment consistent with this opinion.

*Judgment reversed and case remanded. Phipps, J., concurs. Smith, P. J., concurs specially.*

SMITH, Presiding Judge, concurring specially.

I concur fully in all that is said in the majority. I write separately to emphasize that we are constrained to reverse because the UM statute does not define the scope of "automobile liability" or "motor vehicle liability" and does not except excess and umbrella liability policies from its requirements. This omission may well have been an oversight, but we have no authority to rewrite the statute; that must be the task of the General Assembly.

DECIDED AUGUST 31, 2006 —
RECONSIDERATION DENIED NOVEMBER 1, 2006 — 

*Alembik, Fine & Callner, Seth A. Litman, Keith D. Siver*, for appellants.
*Mabry & McClelland, Rex D. Smith, Samantha R. Johnson, Robert M. Darroch*, for appellee.

