**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 10, 2013**

# In the Court of Appeals of Georgia

A13A0702.   ST. PAUL FIRE AND MARINE INSURANCE
          COMPANY v. HUGHES.

MILLER, Judge.

St. Paul Fire and Marine Insurance Co. appeals the trial court's order granting partial summary judgment to Wallace Hughes in his suit to recover for the injuries he sustained in an accident that occurred while he was driving a vehicle that was covered under a St. Paul excess and umbrella insurance policy (hereinafter the "Policy"). St. Paul contends that Indiana law, rather than Georgia law, applies to the Policy, and as a matter of Indiana law, the Policy does not provide uninsured/underinsured motorist ("UM") benefits. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. O.C.G.A. § 9-11-56 (c). A de novo standard of review applies to an

appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *O'Neal v. State Farm Mut. Auto. Ins. Co.*, 243 Ga. App. 756 (533 SE2d 781) (2000).

So viewed, the evidence shows that St. Paul issued a one-year $8 million Commercial Umbrella Liability Policy to Hughes's employer, Townsend Tree Service Co., Inc., on July 1, 2005. The Policy was issued and delivered to Townsend in Indiana, and the Policy specifically excluded UM coverage. St. Paul is licensed in Georgia, however, and there was no written rejection of UM benefits for the Policy.

On August 18, 2005, Hughes, who lived in Enigma, Georgia, was involved in a two-vehicle accident in Alma, Georgia. Hughes was driving a Ford F-150 truck owned by Townsend. The truck was principally used and garaged in Georgia but was registered in the state of Indiana. Hughes filed suit against the other driver involved in the accident, and subsequently settled with the other driver's insurance carrier for its $25,000 policy limits.

Hughes then sought UM benefits under an Ace American Insurance Company motor vehicle policy issued to Townsend. The trial court, however, granted summary

2

judgment to Ace, finding that Ace's policy did not provide UM coverage because it was a renewal policy and Townsend had rejected UM coverage in the previous year's policy. Hughes then sought UM benefits under the St. Paul Policy.

Hughes moved for partial summary judgment on his claim that the Policy provides UM coverage. St. Paul filed a cross-motion for summary judgment, contending that Indiana law applied, and Indiana law did not require UM coverage at the time the Policy was issued. The trial court granted Hughes's motion for partial summary judgment, and denied St. Paul's cross-motion, finding that St. Paul is licensed in Georgia, and the truck Hughes was driving at the time of the accident was principally garaged and used in Georgia. The trial court further found that OCGA § 33-7-11 applied, and in the absence of a written waiver of UM benefits, St. Paul must provide up to $8 million in UM benefits to Hughes. This appeal ensued.

In its sole enumeration of error, St. Paul contends that the trial court erred in granting Hughes's motion for partial summary judgment and in denying St. Paul's cross-motion for summary judgment because Indiana law, rather than Georgia law applies to the Policy. We disagree.

At the time of Hughes's accident, Georgia's Uninsured Motorist Statute pertinently provided that:

[n]o automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be *issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state* unless it contains an endorsement or provisions undertaking to pay the insured all sums which said insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be:

(A) Not less than $25,000.00 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, $50,000.00 because of bodily injury to or death of two or more persons in any one accident, and $25,000.00 because of injury to or destruction of property; or

(B) Equal to the limits of liability because of bodily injury to or death of one person in any one accident and of two or more persons in any one accident, and because of injury to or destruction of property of the insured which is contained in the insured's personal coverage in the automobile liability policy or motor vehicle liability policy issued by the insurer to the insured if those limits of liability exceed the limits of liability set forth in subparagraph (A) of this paragraph of this Code section. In any event, the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability.

(Emphasis supplied.) OCGA § 33-7-11 (a) (1) (2005). Moreover, at that time, the statute applied to umbrella and excess liability policies, in addition to primary insurance policies, unless the named insured rejected UM coverage in writing. See *Abrohams v. Atlantic Mut. Ins. Agency*, 282 Ga. App. 176, 180 (1) (638 SE2d 330) (2006); OCGA § 33-7-11 (a) (3) (2005).[1]

Georgia courts have repeatedly emphasized the remedial nature and purpose of OCGA § 33-7-11. See *Wagner v. Nationwide Mut. Fire Ins. Co.*, 288 Ga. App. 132 (653 SE2d 526) (2007).

> The purpose of uninsured motorist or UM coverage is to place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance. Stated otherwise, the purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers. The Georgia uninsured motorist

---

[1] The legislature amended OCGA § 33-7-11 (a) (3) in 2008 to exclude umbrella or excess liability policies unless such policies or a policy endorsement affirmatively provided for UM coverage. See Ga. L. 2008, p. 1192, § 1. The 2008 amendment expressly applies to policies issued, delivered or renewed in this state on and after January 1, 2009. See id. at § 5 (a). Accordingly, the amendment does not apply to the Policy, which was issued on July 1, 2005.

5

statute is designed to protect the insured as to his actual loss, within the limits of the policy or policies of which he is a beneficiary.

(Citations and punctuation omitted.) *State Farm Mut. Auto. Ins. Co. v. Adams*, 288 Ga. 315, 316-317 (702 SE2d 898) (2010). Moreover, the mandatory language of the UM statute plainly and without exception provides for the payment of all sums which the insured is legally entitled to recover as damages from the uninsured motorist. See *Wagner*, supra, 288 Ga. App. at 133. Accordingly, Georgia courts have consistently struck down UM exclusions where they conflict with the remedial purpose of UM coverage. See, e.g., *Doe v. Rampley*, 226 Ga. 575, 577 (1) (351 SE2d 205) (1987) (exclusion which would avoid coverage if insured occupied noncovered motor vehicle furnished for his regular use conflicted with UM coverage requirement); *Abrohams*, supra, 282 Ga. App. at 182 (3) (UM exclusion in umbrella policy conflicted with plain terms of Georgia's insurance statutes).

St. Paul argues that Indiana law controls the question of UM coverage in this case, because the Policy was delivered in Indiana. St. Paul cites several Georgia cases holding that insurance contracts are governed by the law of the place where the policy was delivered. None of these cases, however, addressed a situation in which a Georgia resident was injured in an accident while driving a vehicle that was

6

principally garaged and used in Georgia.[2] Moreover, in interpreting the "principally garaged and principally used" language in OCGA § 33-7-11 (a) (1), the Georgia Supreme Court has held that

> the validity of and rights created by a liability insurance contract are to be determined by the law of the state which the parties understood to be the principal location of the insured risk during the term of the policy. . . . because, in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged during most of the period in question.

(Citations and punctuation omitted.) *Amica Mut. Ins. Co. v. Bourgault*, 263 Ga. 157, 160 (2) (429 SE2d 908) (1993).

---

[2] See *O'Neal*, supra, 243 Ga. App. at 757 (1) (trial court correctly applied Tennesee law in determining effect of Tennessee insured's failure to comply with notice requirements for making UM claim under Tennessee insurance contract executed and delivered in Tennessee); *Dacosta v. Allstate Ins. Co.*, 188 Ga. App. 10-11 (372 SE2d 7) (1988) (applying Tennessee law in case involving insured residing in Tennessee and policy issued there and holding that application of Tennessee statute allowing offset of workers compensation benefits against UM benefits did not frustrate purpose of Georgia's UM statute); *Howard v. Doe*, 174 Ga. App. 415, 415-416 (330 SE2d 370) (1985) (holding that Tennessee law governed availability of UM benefits to Tennessee resident under policy executed and delivered in Tennessee and that insured failed to show prejudice to public interest from application of Tennessee statute excluding UM coverage of accident allegedly involving an unknown driver); *Belk v. Doe*, 191 Ga. App. 475, 475-476 (382 SE2d 195) (1989) (applying Tennessee law to case in which Tennessee resident insured under Tennessee policy was involved in accident with unknown driver).

Here, the undisputed evidence showed that the truck Hughes was driving at the time of the accident was principally used and garaged in Georgia. Therefore it was reasonable for the parties to assume that Georgia was the principal location of risk and to expect that Georgia law, rather than Indiana law, would be determinative on the issue of whether the Policy provides UM coverage. See *Amica*, supra, 263 Ga. at 160 (2). Moreover, to the extent that the choice of law rules in prior Georgia cases, including those relied upon by St. Paul, conflict with the plain language of OCGA § 33-7-11 (2005), the statute controls. See *Douglas County v. Abercrombie*, 226 Ga. 39, 41 (172 SE2d 419) (1970).

Since St. Paul is licensed in Georgia, Hughes was driving a truck that was principally used and garaged in Georgia and there was no written rejection of UM benefits for the Policy, the Policy's UM exclusion conflicts with the plain terms of OCGA § 33-7-11 and was therefore void. See *Abrohams*, supra, 282 Ga. App. at 181-182 (3). Accordingly, the trial court properly denied St. Paul's cross-motion for summary judgment and properly granted Hughes's motion for partial summary judgment on the limited issue of whether the Policy provides UM coverage.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*