**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 13, 2012

# In the Court of Appeals of Georgia

A12A0265. MATTOX v. FRANKLIN COUNTY et al.                    BO-013

BOGGS, Judge.

Jerry Mattox appeals from a superior court order requiring him to post an appeal bond in the amount of $2.1 million following the court's dismissal of his declaratory judgment action challenging the validity and implementation of a special purpose local option sales tax ("SPLOST") resolution passed by the Franklin County Board of Commissioners. For the reasons explained below, we affirm.

The record shows that on November 5, 2010, Mattox filed a pro se complaint for declaratory judgment and injunctive relief against Franklin County and Samuel Elrod, in his capacity as chair of the Franklin County Board of Commissioners (collectively "the County"). In his complaint, Mattox sought a judgment declaring that a November 2, 2010 SPLOST referendum is "void *ab initio* as an ultra vires act,"

and that impermissible uses of SPLOST funds are also "void and illegal." On February 2, 2011, the superior court granted the County's motion to dismiss the complaint based upon its conclusion that "the descriptions contained in the [SPLOST] Resolution are sufficiently specific as a matter of law" and that Mattox's remaining contentions were not ripe for judicial review. On February 2, 2011, Mattox filed a notice of appeal from this order.

On April 28, 2011, the County moved for an appeal bond in the amount of $2,627,065 under OCGA §§ 5-6-46 and 50-15-2. The amount of the bond sought by the County represented potential increases on interest and construction costs during the pendency of the appeal, as well as additional legal fees and expenses that would be incurred by the County. On May 13, 2011, the trial court issued an order requiring Mattox to post a bond in the amount of $2.1 million within 10 days "as a condition precedent to any further pursuit" of Mattox's appeal. The order provided that his appeal would be deemed withdrawn if he failed to pay within the time required. On May 26, 2011, Mattox appealed the superior court's order requiring him to post a

$2.1 million bond to the Supreme Court of Georgia.[1] The Supreme Court subsequently transferred the case to this court.

In his sole enumeration of error in this appeal, Mattox contends the superior court erred by granting an appeal bond under OCGA § 50-15-2. He first argues that his complaint is not a "public lawsuit" governed by that Code section. He asserts in the alternative that, even if OCGA § 50-15-2 applies to his complaint, a bond should not have been required because his complaint was meritorious.

OCGA § 50-15-2 provides in relevant part:

> At any time prior to the final determination of a public lawsuit in the trial court or on appeal, any political subdivision which is a party to the action may petition for an order of the court that the opposing party or parties or intervenors be dismissed unless such opposing party or parties or intervenors post a bond with surety to be approved by the court payable to the moving party for the payment of all damages and costs which may accrue by reason of such opposition or intervention in the event the moving party prevails.

---

[1] On June 2, 2011, seven days after Mattox filed his notice of appeal from the bond order, the superior court issued an amended order correcting a scrivener's error in the amount of the bond; it also clarified that the bond was ordered "pursuant to OCGA § 5-6-46 and § 50-15-2." On June 6, 2011, the superior court granted the County's motion to dismiss the appeal based upon Mattox's failure to post a bond under OCGA § 50-15-2.

OCGA § 50-15-1 (2) defines a "public lawsuit" as

> any action whereby the validity, reasonability, soundness, location, wisdom, feasibility, extent, or character of construction, improvement, financing, or leasing of any public improvement, project, or facility by any political subdivision, as owner or as lessee, is questioned directly or indirectly, including, but not limited to, actions for declaratory judgments or injunctions or interventions to declare invalid or to enjoin or to prevent such construction, improvement, financing, or leasing as lessor or as lessee and means any action to prevent or declare invalid or enjoin the creation, organization, or formation of any such political subdivision.

There are few reported cases in Georgia addressing the scope of the Public Lawsuits Act. In *Haney v. Development Auth. of Bremen*, 271 Ga. 403 (519 SE2d 665) (1999), the Supreme Court of Georgia determined that "[t]he purpose of the act is to protect the public from increased financial costs caused by the filing of non-meritorious or frivolous litigation against [a public improvement] project." (Citation and footnote omitted.) Id. at 404 (1). Based upon what it characterized as "the broad statutory definitions of the terms 'political subdivision' and 'public lawsuit,'" the Supreme Court held "that the provisions of the Public Lawsuits Act apply to proceedings under the Revenue Bond Law. See OCGA § 36-82-60 to 36-82-85." Id. at 405 (1). Although the Supreme Court found that the Public Lawsuits Act applied to the case before it,

4

it concluded that the trial court abused its discretion by requiring the appellants to post a bond because the appellants had "raised meritorious claims" below. Id. at 406 (2).

1. Mattox contends that the Public Lawsuits Act does not apply to his complaint because it does not fall within the definition of a public lawsuit under OCGA § 50-15-1 (2). Mattox correctly asserts that the few cases addressing the scope of the appeal bond requirements in the Public Lawsuits Act have involved bond validation proceedings. See *Haney*, supra; *Hay v. Newton County*, 246 Ga. App. 44 (538 SE2d 181) (2000); *Berry v. City of East Point*, 277 Ga. App. 649 (627 SE2d 391) (2006). Because this is not a bond validation proceeding, we must determine whether Mattox's particular complaint falls within the statutory definition of public lawsuit, keeping in mind the Supreme Court's conclusion in *Haney*, supra, that the scope of this definition is "broad."

Mattox's complaint alleges that it "challenges the validity of a . . . SPLOST resolution, intergovernmental agreement, referendum and potential implementation in Franklin County, Georgia." It states:

> Said SPLOST purports to collect a one percent sales and use tax and creation of general obligation debt to be paid with the tax. The County

5

and five cities are to share in the proceeds under an intergovernmental agreement . . . *for capital outlay projects for the county . . . and the five cities*. Said tax to be collected for a period of six years after implementation. The division of funds and capital outlay projects are listed in the intergovernmental agreement. . . ." (Emphasis supplied.)

We find these allegations sufficient to fall within the broad definition of "public lawsuit." OCGA § 50-15-1 (2). At a minimum, Mattox's complaint challenges the "validity" of "financing . . . of [a] public improvement [or] project" by a "political subdivision."[2] Id.

2. Having found that Mattox's complaint is a "public lawsuit," we must now determine whether it raises "frivolous or non-meritorious" challenges justifying an appeal bond under OCGA § 50-15-2. See *Haney*, supra, 271 Ga. at 406 (2); *Hay*, supra, 246 Ga. App. at 46-47 (2). Mattox's claims fall into three general categories: that the resolution fails to set out with sufficient particularity the specific projects for the use of the SPLOST funds; that there are discrepancies between the project descriptions and amounts in the referendum when compared to the intergovernmental

---

[2] OCGA § 50-15-5 (1) defines "political subdivision" to include municipalities and counties.

6

agreement; and that funds will be provided to projects that are not owned or operated by the county or cities.

After carefully reviewing Mattox's complaint, we conclude that none of the grounds raised are meritorious. First, the resolution[3] is sufficiently specific as a matter of law. OCGA § 48-8-111 (a) requires only that the resolution "specify eligible expenditures identified by the county and any qualified municipality for use of the proceeds" as well as "[t]he purpose or purposes for which the proceeds of the tax are to be used and may be expended." OCGA § 48-8-111 (a) (1). "The proceeds received from the tax authorized by this part shall be used by the county and qualified municipalities . . . exclusively for the purpose or purposes specified in the resolution or ordinance calling for imposition of the tax." OCGA § 48-8-121 (a) (1). The degree of specificity sought by Mattox simply is not mandated by the SPLOST statute. See 1990 Op. Atty. Gen. U90-18.

Second, any inconsistencies between the funding amounts in the intergovernment agreement and the resolution do not render the resolution and

_____

[3] The resolution at issue identifies the following categories of projects: "water and sewer;" "industrial development;" "public safety;" "roads, streets and bridges;" "airport;" "courthouse/public facilities;" "recreation;" "community center/public facilities;" "parking facilities;" "library;" and "administrative buildings/government buildings/facilities."

7

referendum void. Irregularities in the exercise of granted powers do not render the action taken void. See *City of Holly Springs v. Cherokee County*, 299 Ga. App. 451, 457-458 (3) (682 SE2d 644) (2009); *Faulk v. Twiggs County*, 269 Ga. 809, 811 (504 SE2d 668) (1998). Additionally, any inconsistencies between the funding amounts can be corrected through amendment of the intergovernment agreement. See *Hicks v. Khoury*, 283 Ga. 407, 408-409 (1) (658 SE2d 616) (2008) (affirming denial of mandamus in connection with amended intergovernmental agreement). And finally, the trial court properly concluded that Mattox's allegations that funds will be used for projects not owned by the county or cities are hypothetical, abstract, and not yet ripe for adjudication based upon the pleadings and attached exhibits in the record before us. *Bailey v. City of Atlanta*, 296 Ga. App. 679, 682 (1) (675 SE2d 564) (2009) (declaratory judgment cannot be provided based upon "possible or probable future contingency"). Nothing in the resolution, intergovernmental agreement, referendum, or the proposed SPLOST projects list shows that specific capital outlay projects will be *owned* by entities other than the county or one of the cities.

Because Mattox's complaint lacked merit, the trial court did not err by requiring him to post an appeal bond under OCGA § 50-15-2.

*Judgment affirmed. Doyle, P. J. and Andrews, J., concur.*

8