S13Q0212. WILSON et al. v. THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT.
(744 SE2d 732)

BLACKWELL, Justice.

This is an insurance coverage dispute in which the United States District Court for the Northern District of Georgia has certified two questions to this Court. Before we get to the questions, however, some background would be appropriate. In November 2001, The Automobile Insurance Company of Hartford, Connecticut ("Travelers")[1] issued a personal umbrella insurance policy to Louis and Betty Wilson. At that time, Georgia law provided that certain insurance policies could be issued only with a provision for uninsured motorist coverage, OCGA § 33-7-11 (a) (1) (2000),[2] unless the insured had rejected such coverage in writing, OCGA § 33-7-11 (a) (3) (2000), and

---

[2] This does not mean that the trial court was *required* to take judicial notice of the previous order.

[1] The Automobile Insurance Company of Hartford, Connecticut is a subsidiary of The Travelers Companies, Inc. The parties refer to it as "Travelers," and to keep things simple, so do we.

[2] We cite the 2000 version of the statute because, although pertinent provisions of the statute were amended in 2001, those amendments applied only to policies "issued or renewed on or after January 1, 2002." Ga. L. 2001, p. 1228, § 3. Accordingly, the 2000 version of the statute is the version that applied to the issue of the original policy in November 2001.

umbrella policies were among the policies in which uninsured motorist coverage was required. *Abrohams v. Atlantic Mut. Ins. Agency*, 282 Ga. App. 176, 180 (1) (638 SE2d 330) (2006).[3] No one disputes that the Wilsons did not reject uninsured motorist coverage in writing, and so, although their original policy purported to exclude uninsured motorist coverage, such coverage was required by law and, therefore, implied into their original policy by operation of law. See OCGA § 33-24-12 (a) (insurance policy that is not in compliance with the Georgia Insurance Code "shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy . . . been in full compliance with th[e Code]"). See also *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 714 (3) (300 SE2d 673) (1983) ("[W]hen an insurer issues a policy with provisions not in compliance with the law[,] the contract will not be rendered void[,] but the provisions of the statute will be grafted into the policy.").

The term of the original policy was for one year, and the Wilsons renewed their policy annually thereafter. For as long as the law required that their policy afford uninsured motorist coverage, they had such coverage by operation of law. Then, in 2008, our General Assembly amended the law to exempt umbrella policies from its mandatory coverage requirements: "The coverage required under [OCGA § 33-7-11 (a) (1)] excludes umbrella or excess liability policies unless affirmatively provided for in such policies or in a policy endorsement." Ga. L. 2008, p. 1192, § 1. This amendment applied to "all policies issued, delivered, issued for delivery, or renewed in this state on and after [January 1, 2009]." Id. at § 5. The Wilsons renewed their umbrella policy again in November 2009, a renewal to which the 2008 amendment applied by its terms.

In October 2010, Louis Wilson was seriously injured in an automobile collision. The Wilsons gave notice of a claim for uninsured motorist benefits to Travelers, but Travelers disputed coverage, contending that the Wilsons no longer had uninsured motorist coverage under their umbrella policy, owing to the 2008 amendment. The Wilsons sued Travelers, and Travelers removed the case to the District Court, which subsequently certified these questions to us:

> 1. Do the offer/rejection requirements of the Georgia Uninsured Motorist Act, OCGA § 33-7-11, apply to a policy of umbrella insurance renewed [on or] after January 1, 2009?
> 2. Do the notice requirements set forth in OCGA § 33-7-11 (b) (1) (D) (ii) (III) apply to a policy of umbrella insurance?

---

[3] No party disputes whether *Abrohams* was correctly decided, and we accept that it was.

We will address these questions in turn.

1. As we said earlier, the 2008 amendment applies by its terms to any policy "renewed . . . on and after [January 1, 2009]." Ga. L. 2008, p. 1192, § 5. But the Wilsons contend that it would be unconstitutional to apply the 2008 amendment to the renewal of a policy originally issued before the adoption of the amendment and into which uninsured motorist coverage previously had been implied by operation of law. As to such a renewal, the Wilsons explain, the insured has a right to uninsured motorist coverage that vested prior to the adoption of the statutory amendment, and to the extent the amendment divests the insured of that right, it contravenes the constitutional prohibition of "retroactive law[s]" and "laws impairing the obligation of contract." Ga. Const., Art. I, Sec. I, Par. X. No doubt, if the statutory amendment had purported to strip uninsured motorist coverage from insurance policies issued prior to its adoption, but still in force as of its effective date, it would have posed serious constitutional questions. But the amendment applies to a policy only upon a renewal of that policy *after* the adoption and effective date of the amendment, and in any event, it does not strip any coverage from a renewed policy. By its terms, it merely relieves the issuer of an umbrella policy from the mandatory coverage requirement of OCGA § 33-7-11 (a) (1), leaving the insurer and insured free to negotiate the terms of the renewal as they see fit, subject to any contractual obligations or other statutory requirements that might pertain to such a renewal.

Whether uninsured motorist coverage that previously was implied into a policy continues upon renewal would depend in part upon the terms of the renewal, that is, whether the renewal simply renews the policy as it was before — including, of course, the uninsured motorist coverage previously implied by operation of law into the policy — or whether it instead purports to modify the policy upon renewal. Those are questions, of course, of contract law, beyond the scope of the certified questions in this case. Moreover, the modification of a policy upon renewal may be limited by other laws unaffected by the 2008 amendment. For instance, under OCGA § 33-24-45 — a statute that applies to the renewal of an "automobile policy" with uninsured motorist coverage,[4] OCGA § 33-24-45 (a) (2008) — an insurer must renew a covered policy so as to "provid[e] no less than the coverage

---

[4] *Abrohams* held that an umbrella policy is a "automobile liability" or "motor vehicle liability" policy for purposes of OCGA § 33-7-11. 282 Ga. App. at 177-180 (1). Accordingly, it is at least arguable that an umbrella policy also is an "automobile policy" for purposes of OCGA § 33-24-45. That question, however, is not within the scope of the certified questions, and it has not been briefed by the parties, so we will not resolve it definitively here.

contained in the superseded policy," unless the insurer gives statutory notice of a reason for the modification of coverage. OCGA § 33-24-45 (b) (2), (e) (1)-(2) (2008). If a policy to which OCGA § 33-24-45 applied were renewed without the required notice of a reason for modifying coverage, it necessarily would be renewed with the same coverage as the policy that it superseded, any provision of the policy otherwise notwithstanding. See OCGA § 33-24-12 (a). So understood, we conclude that the 2008 amendment of OCGA § 33-7-11 — as applied to the renewal of a policy issued originally before the adoption of the amendment and into which uninsured motorist coverage had been implied by operation of law — works no impairment of vested contractual rights. And with these qualifications, we answer the first question certified by the District Court in the negative.

2. According to OCGA § 33-7-11 (b) (1) (D) (ii) (III),

[f]or private passenger motor vehicle insurance policies in effect on January 1, 2009, insurers shall send to their insureds who have not rejected coverage pursuant to [OCGA § 33-7-11 (a) (3)] a notice at least 45 days before the first renewal of such policies advising of the coverage options set forth in this division.

We must determine whether, notwithstanding that an umbrella policy need not afford uninsured motorist coverage, this notice provision nevertheless applies with respect to an umbrella policy. The Wilsons claim that the "coverage options" that are referenced in subdivision (b) (1) (D) (ii) (III) are the options set out in paragraph (a) (1) of the statute, but their theory is contradicted by the plain statutory language. The notice requirement provides for the insurer to advise the insured "of the coverage options set forth *in this division*" (emphasis added), and the phrase "in this division" refers to division (b) (1) (D) (ii) of the statute, not subsection (a). The coverage options described in division (b) (1) (D) (ii) allow insureds who are receiving uninsured motorist coverage to select the type of coverage that they will receive: either "added on" uninsured motorist coverage under subdivision (b) (1) (d) (ii) (I); or "reduced" uninsured motorist coverage under subdivision (b) (1) (d) (ii) (II). See Frank E. Jenkins III & Wallace Miller III, *Georgia Automobile Insurance Law*, § 29.8 (2012-2013 ed.). Although the statute does not explicitly state whether insurers of umbrella policies must provide notice of those coverage options, given that OCGA § 33-7-11 (a) (3) excludes umbrella policies from the requirement to offer uninsured motorist coverage at all, it would be nonsensical to require an insurer to provide an insured with notice of the types of uninsured motorist coverage options that the

insurer was not obligated to provide. As a result, we answer the second certified question in the negative.

*Certified questions answered. All the Justices concur.*

DECIDED JUNE 17, 2013.

*Carley, Gregory & Gregory, George H. Carley, Hardy Gregory, Jr., Antoinette D. Gregory, Hyatt & Hyatt, John M. Hyatt, William R. Moody, Jr.*, for appellants.

*Magill, Atkinson & Dermer, David M. Atkinson, Katherine J. Merriam*, for appellee.