## SECOND DIVISION
## DOYLE, C. J.,
## MILLER, P. J., and REESE, J.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 24, 2017**

# In the Court of Appeals of Georgia

A17A0524. MASSEY v. ALLSTATE INSURANCE COMPANY.

MILLER, Presiding Judge.

Plaintiff Jody Massey appeals from the trial court's order granting summary judgment to Allstate Insurance Company ("Allstate") on her claim for uninsured / underinsured motorist ("UM") coverage under her umbrella policy with Allstate.[1] Massey contends on appeal that the trial court erred when it ruled that her Allstate umbrella policy did not include UM coverage at the time of the accident at issue in

---

[1] On the facts of this case, Massey's claim implicates underinsured motorist coverage. The statutory characterization of both uninsured and underinsured motorists is that of "uninsured." *FCCI Ins. Co. v. McLendon Enterprises, Inc.*, 297 Ga. 136, 137, n. 2 & 142 (772 SE2d 651) (2015). The umbrella policy at issue in this case similarly defines "uninsured" to include both uninsured and underinsured motor vehicles.

this case. For the reasons that follow, we reverse the trial court's judgment and remand the case for further proceedings.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a trial court's grant of summary judgment de novo, construing the evidence, and all reasonable conclusions and inferences drawn from it, in favor of the nonmovant." (Citations and punctuation omitted.) *Thomas v. Summers*, 329 Ga. App. 250, 250 (764 SE2d 578) (2014); see also OCGA § 9-11-56 (c).

So viewed, the evidence shows that Massey suffered several injuries when a truck being driven by Brett Pruitt collided with a car being driven by Massey on June 11, 2012. In May 2014, she filed this action against Pruitt, seeking monetary damages for her injuries. Massey subsequently settled with Pruitt in exchange for $100,000, the limits of his automobile insurance policy. Massey then amended her complaint to add a claim for a declaratory judgment to establish UM coverage and limits under both her primary automobile and umbrella policies with Allstate. Massey later settled her primary automobile policy claim with Allstate for the UM coverage limits of $100,000.

2

Following discovery, Allstate moved for summary judgment on Massey's claim under her umbrella policy, asserting that the policy had ceased to include UM coverage in June 2010. The trial court agreed and granted summary judgment to Allstate. This appeal followed.

1. Massey challenges the trial court's determination that her Allstate umbrella policy did not include UM coverage at the time of her accident with Pruitt. She contends that the trial court erred when it ruled that (a) Georgia's automobile policy non-renewal statute, OCGA § 33-24-45, does not apply to umbrella policies that include automobile coverage, and (b) as a result, Allstate was not required to comply with the statute's non-renewal notice requirements when, in 2010, it purportedly cancelled the UM coverage previously included in Massey's umbrella policy.[2] We agree.

---

[2] Although the accident in this case occurred during the 2011-2012 policy period, the relevant non-renewal notice, dated May 2010, initially applied to the 2010-2011 policy period. There appears to be no dispute that no subsequent non-renewal notices were issued and that, as a result, whatever coverage was in effect for the 2010-2011 policy period remained in effect for the 2011-2012 period. As further discussed herein, whether the May 2010 non-renewal notice was effective depends on whether OCGA § 33-24-45 applied to the policy being renewed, in this case, Massey's 2009-2010 umbrella policy.

3

In June 2009, Allstate issued primary automobile and umbrella insurance policies to Massey. The umbrella policy included both excess liability coverage of $5,000,000 per occurrence and UM coverage of $5,000,000 per accident.[3] Separate premiums were assessed for each type of coverage. In May 2010, Allstate renewed Massey's umbrella policy for one year, effective June 30, 2010. The 2010 renewal documents again included excess liability coverage of $5,000,000 per occurrence, for which a premium was assessed. The documents indicated, however, that the policy no longer included UM coverage and, accordingly, did not assess a separate premium for such coverage. A subsequent notice dated June 2, 2010, indicated that Massey's excess liability limits had been reduced to $1,000,000 per occurrence and again included no UM coverage.[4] The 2011 umbrella policy renewal documents, which covered the time period in which the accident at issue occurred, similarly listed

---

[3] Before 2009, Georgia law required certain insurance policies, including umbrella policies, to include UM coverage unless the insured had rejected such coverage in writing. See *Wilson v. Automobile Ins. Co.*, 293 Ga. 251, 251-252 (744 SE2d 732) (2013). The General Assembly later exempted from this requirement umbrella policies issued on or after January 1, 2009. See Ga. L. 2008, pp. 1192, 1194, 1198, §§ 1, 5 (a); *Wilson*, supra, 293 Ga. at 252.

[4] It is unclear on the current record what precipitated the purported reduction in excess liability limits from $5,000,000 to $1,000,000.

Massey's excess liability limits as $1,000,000 per occurrence and again included no UM coverage.

The primary dispute in this case centers on whether Allstate properly cancelled the UM coverage it previously had provided under Massey's umbrella policy when it allegedly mailed a notice to her in May 2010 indicating that it was not renewing the UM coverage.[5] To answer this question, we first must determine whether OCGA § 33-24-45 – which contains the requirements with which an insurer must comply to effectively cancel or refuse to renew automobile policy coverages – applies to Massey's umbrella policy with Allstate. If so, we then must consider whether Allstate properly complied with the statutory requirements when it purported to cancel the UM coverage previously included in that policy. We address each question in turn.

*a. Application of OCGA § 33-24-45 to Massey's umbrella policy*

Massey maintains that OCGA § 33-24-45 governs her umbrella policy, while Allstate contends that the statute applies only to primary automobile policies and not to umbrella policies.

---

[5] It is undisputed that Allstate continued to provide $100,000 in UM coverage under Massey's primary automobile policy, and, as discussed above, the parties have settled Massey's claim under that policy.

The interpretation of a statute is a question of law, which we review de novo. *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013). "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). "[T]he cardinal rule is to glean the intent of the legislature in the light of the legislative intent as found in the statute as a whole." (Citation and punctuation omitted.) *Abrohams v. Atlantic Mut. Ins. Agency*, 282 Ga. App. 176, 178 (1) (638 SE2d 330) (2006). In doing so, we "follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to ensure that the legislature meant something else. Absent clear evidence that a contrary meaning was intended by the legislature, we assign words in a statute their ordinary, logical, and common meanings." (Citation and punctuation omitted.) *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015).

With these broad canons of statutory construction in mind, we note that statutes governing UM insurance "are remedial in nature and must be broadly construed to accomplish the legislative purpose." (Citation and punctuation omitted.) *Abrohams*, supra, 282 Ga. App. at 178 (1). Further, "provisions in insurance policies that conflict

6

with the plain terms of Georgia's insurance statutes are illegal and of no effect."

(Citation omitted.) Id. at 181 (3).

By its terms, OCGA § 33-24-45 applies to "automobile polic[ies] or motorcycle polic[ies]" that

> insur[e] a natural person as named insured or one or more related individuals resident of the same household and which provide[] bodily injury coverage and property damage liability coverage, personal injury protection, physical damage coverage, medical payments coverage, *or uninsured motorists' protection coverage or any combination of coverages*.

(Emphasis supplied.) OCGA § 33-24-45 (a), (b) (1). The plain language of this provision indicates that it applied to Massey's 2009-2010 umbrella policy, which included coverage for various types of injuries and damage arising out of her use of an automobile, including injuries and damage caused by uninsured motorists. Nothing in the plain language of this statute suggests that the General Assembly intended to limit the term "automobile polic[ies]" to primary policies only and to exclude umbrella policies that include automobile coverage, and we see no reason why such a distinction should be read into the statute. See *Ga. Farm Bureau Mut. Ins. Co. v. Phillips*, 251 Ga. 244, 246 (304 SE2d 725) (1983) (noting that OCGA § 33-24-45

7

"does not distinguish between mandatory minimum and optional amounts of coverage"). "Had the legislature intended to limit the application of [OCGA § 33-24-45] to primary policies only, as argued by [Allstate], it could easily have done so." See *Abrohams*, supra, 282 Ga. App. at 179 (1) (interpreting a prior version of OCGA § 33-7-11, the UM policy statute). In fact, the General Assembly did just that with respect to a related statute in 2008, when it amended OCGA § 33-7-11 to explicitly exclude umbrella policies.[6] See OCGA § 33-7-11 (a) (1) (requiring UM coverage to be included in motor vehicle liability policies absent written rejection by the insured), (3) (excluding umbrella policies from this requirement); Ga. L. 2008, pp. 1192, 1194, § 1; *Wilson v. Automobile Ins. Co.*, 293 Ga. 251, 252 (744 SE2d 732) (2013).

Notably, before the 2008 amendment to OCGA § 33-7-11, we interpreted that statute – which governs "automobile" and "motor vehicle liability polic[ies]" – to apply to umbrella policies that include automobile and motor vehicle coverage. See *Abrohams*, supra, 282 Ga. App. at 180 (1). The General Assembly's decision after *Abrohams* to expressly exclude umbrella policies from OCGA § 33-7-11, but not to

---

[6] For this reason, Allstate's reliance on *Wilson*, supra, 293 Ga. at 252 – in which we interpreted the plain language of OCGA § 33-7-11 *post-2008* to exclude umbrella policies – is misplaced.

exclude such policies from OCGA § 33-24-45, further supports the proposition that it intended umbrella policies to be governed by OCGA § 33-24-45. See *Summerlin v. Ga. Pines Community Svc. Bd.*, 286 Ga. 593, 594 (2) (690 SE2d 401) (2010) ("The General Assembly is presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it.") (citation omitted).

For this reason, there is no merit to Allstate's contention – which the trial court largely accepted – that the 2008 amendment to OCGA § 33-7-11 excluding umbrella policies from that statute shows that the General Assembly also intended umbrella policies to be excluded from OCGA § 33-24-45. The proposition that a legislature manifested its intent to impose the very same limitation on two statutes by amending one, but not the other, turns logic on its head, at least with respect to the statutes at issue here, and ignores our rules of statutory construction. See *Summerlin*, supra, 286 Ga. at 594-595 (2) (words in a statute are construed in the context of other statutes and the common law); *Abrohams*, supra, 282 Ga. App. at 178 (1); *Tolleson Lumber Co. v. Kirk*, 200 Ga. App. 689, 691 (2) (409 SE2d 260) (1991) (a statute should be construed to "square with common sense and sound reasoning" and to avoid "unreasonable or absurd consequences not contemplated by the legislature") (citation and punctuation omitted). Finally, Allstate's related claim that umbrella policies

9

*should* be excluded by OCGA § 33-24-45 *as a matter of policy* is better addressed to the General Assembly. See *Deal*, supra, 294 Ga. at 174 (1) (a), n. 11 (policy arguments should be addressed to the legislature, as it is an appellate court's duty to "interpret the laws as they are written") (citation and punctuation omitted).

For each of these reasons, we conclude that Massey's 2009-2010 umbrella policy with Allstate was subject to the non-renewal provisions of OCGA § 33-24-45, and the trial court erred when it ruled to the contrary.


*b. Allstate's compliance with OCGA § 33-24-45*

Massey contends that Allstate's purported cancellation of the UM coverage under her umbrella policy in May 2010 was ineffective for failure to comply with the non-renewal notice requirements set forth in OCGA § 33-24-45. Allstate maintains that, even if the statute applies here, Allstate sufficiently complied with its requirements.

For written notice of non-renewal to be effective under OCGA § 33-24-45, the insurer must either (a) deliver the notice in person to the insured or (b) deliver the notice via first-class mail and receive "the receipt provided by the United States Postal Service or such other evidence of mailing as prescribed or accepted by the

10

United States Postal Service."[8] OCGA § 33-24-45 (e) (1). The terms of this statute "must be exactly followed." *Garber v. American Mut. Fire Ins. Co.*, 131 Ga. App. 366, 368 (4) (206 SE2d 86) (1974) (addressing former Code Ann. § 56-2430.1, the predecessor to OCGA § 33-24-45); see also *American Intl. Life Ins. Co. v. Hartsfield*, 147 Ga. App. 213, 216 (4) (248 SE2d 518) (1978) (effective cancellation requires "[s]trict adherence" to statutory notice requirements). Thus, absent an admission by the insured that actual notice was received, notice that does not comply with these provisions is ineffective. See *Travelers Indem. Co. v. Guess*, 243 Ga. 559, 560-561 (1) & n. 2 (255 SE2d 55) (1979) (holding that materially identical language in former Code Ann. § 56-2430 – the predecessor to OCGA § 33-24-44 (b), which addresses insurance policy cancellation generally – "must be strictly construed"). Absent compliance with OCGA § 33-24-45's non-renewal notice provisions, the policy and its coverages are automatically renewed. See *Bank of Toccoa v. Cotton States Mut. Ins. Co.*, 211 Ga. App. 389, 393 (2) (439 SE2d 60) (1993) (where no non-renewal notice is provided under OCGA § 33-24-45 (e), a policy renews under the same

---

[8] A provision allowing electronic delivery of a non-renewal notice was added to the statute in 2014, well after the date of the notice at issue in this case. See OCGA § 33-24-45 (e) (1), cross-referencing id. § 33-24-14; Ga. L. 2014, pp. 829, 833, § 7. Allstate does not contend that it provided Massey with electronic notice.

11

terms); see also *Stedman v. Cotton States Ins. Co.*, 254 Ga. App. 325, 329 (2) (562 SE2d 256) (2002) (holding that a policy was automatically renewed under OCGA § 33-24-45 where the insured received a renewal declaration well after the statutory deadline).

Massey denies having received the May 2010 non-renewal notice, and Allstate does not contend that it personally delivered the notice to her. Rather, Allstate asserts that it "complied with all statutory requirements" by mailing the notice to Massey's address and that it properly established this fact by affidavit. Allstate concedes, however, that it did not produce a receipt or other evidence of mailing "as prescribed or accepted by the United States Postal Service." See OCGA § 33-24-45 (e) (1). Instead, it argues that requiring it to produce such evidence would be "unreasonable" and unduly burdensome on the facts of this case, given the passage of four years between the issuance of the May 2010 notice and the date on which Massey filed suit.

We first note that Allstate has failed to identify any record evidence supporting its conclusory assertion that complying with the law would impose an undue burden on it.[9] In any event, the statute is clear and must be strictly followed. See *Garber*,

[9] To the contrary, Allstate produced what appears to be an internally-generated notice of the mailing of the May 2010 notice that it maintained despite the passage of time.

12

supra, 131 Ga. App. at 368 (4). Allstate's contention in this regard is essentially a policy question, which, as discussed above, should be directed to the General Assembly. See *Deal*, supra, 294 Ga. at 174 (1) (a), n. 11; *Unified Govt. of Athens-Clarke County v. Athens Newspapers, LLC*, 284 Ga. 192, 200 (2) (663 SE2d 248) (2008) (appellant's claim that a statutory deadline was unreasonably short was a policy argument properly addressed to the legislature). Also as discussed above, absent strict compliance with OCGA § 33-24-45's notice requirements, a covered policy is renewed automatically by operation of law. See *Stedman*, supra, 254 Ga. App. at 329 (2); *Hartsfield*, supra, 147 Ga. App. at 216 (4); *Garber*, supra, 131 Ga. App. at 368 (4). Consequently, because Allstate has not established that it complied with the statutory non-renewal notice requirements, we must conclude that Massey's 2009-2010 umbrella policy, which included UM coverage, was renewed with the same coverage in 2010 and 2011. The trial court erred when it ruled to the contrary.

2. As it did before the trial court, Allstate alternatively argues that, under OCGA § 33-24-45 (g), it was excused from complying with the statutory notice requirements because Massey retained "similar coverage on the same motor vehicle." In a related alternate contention, Allstate maintains that, even if Massey's umbrella policy continued to provide UM coverage after June 2010, that coverage was capped

13

at the $1,000,000 limits of her excess liability coverage. We disagree with both contentions.[10]

OCGA § 33-24-45 (g) provides, "[n]otwithstanding the failure of an insurer to comply with this Code section, termination of any coverage under the policy either by cancellation or [by] nonrenewal shall be effective on the effective date of any other policy providing similar coverage on the same motor vehicle or any replacement of coverage." It is undisputed that, for the one-year period ending on June 30, 2010, Massey's Allstate umbrella policy provided both $5,000,000 in excess liability coverage and $5,000,000 in UM coverage. The parties similarly do not dispute that, for the one-year period beginning on June 30, 2010, and subsequent policy periods through the date of the accident, Massey's primary automobile policy with Allstate included $100,000 in UM coverage. In addition, according to Allstate, Massey's umbrella policy continued to provide $1,000,000 in excess liability coverage after

---

[10] The trial court did not address these arguments, given that it ruled in favor of Allstate on its claim that Massey's umbrella policy was not subject to OCGA § 33-24-45 (e) (1). Nevertheless, the material facts are undisputed. Therefore, in the interest of judicial economy, we exercise our discretion to decide these questions, rather than remanding for the trial court to address them in the first instance. See *High Co. v. Arrington*, 45 Ga. App. 392, 392 (3) (165 SE 151) (1932) (where the material facts are undisputed and the issue on appeal is a question of law, "it is unnecessary to send the case back for another hearing in the trial court"); accord *Ingraham v. Marr*, 246 Ga. App. 445, 447 (2) (540 SE2d 652) (2000).

14

June 30, 2010.[11] On these grounds, Allstate contends that Massey maintained "similar coverage on the same motor vehicle" when it purportedly cancelled $5,000,000 in UM coverage under her umbrella policy because she still was covered by $100,000 in primary UM coverage and $1,000,000 in excess liability coverage. This contention strains the English language beyond its limits.

First, Allstate's suggestion that excess liability and UM coverage are "similar coverage" is belied by the very terms of Massey's 2009-2010 policy, which listed these coverages separately and assessed separate premiums for each. The Insurance Code similarly distinguishes between these two types of coverages, which protect against mutually exclusive losses. See OCGA §§ 33-7-3 (1) ("Liability insurance" protects the insured from liability for injury to another); 33-7-11 (a) (1) ("Uninsured motorist coverage" protects the insured from injury to the insured caused by the owner or operator of an uninsured motor vehicle).

Allstate's claim that the $100,000 in UM coverage provided under Massey's primary automobile policy constitutes "similar coverage on the same motor vehicle" is equally meritless. Followed to its logical conclusion, this contention would allow

---

[11] Allstate's contention that Massey's umbrella policy limits were reduced to $1,000,000 in June 2010 is further addressed herein.

Allstate to avoid the OCGA § 33-24-45 (e) (1) notice requirements simply by providing any reduced amount of UM coverage under any other policy. Even if we limit Allstate's contention to the facts of this case, it is axiomatic that a primary policy with limits of $100,000 does not provide "similar coverage" to an umbrella policy with limits 50 times as high. See *Tolleson Lumber Co.*, supra, 200 Ga. App. at 691 (2) (a statute should be construed to "square with common sense and sound reasoning" and to avoid "unreasonable or absurd consequences not contemplated by the legislature") (citation and punctuation omitted); cf. OCGA § 33-24-45 (a) (2) (defining "Renewal," in relevant part, as a superseding policy "providing no less than the coverage contained in the superseded policy").

Allstate's alternative claim that Massey's UM coverage under her umbrella policy was renewed at lower limits of $1,000,000 fails for the reasons discussed in Division 1, supra. Notably, Allstate has identified no authority supporting its suggestion that an insurer may make an end-run around the non-renewal notice requirements by unilaterally lowering coverage limits to one-fifth of the prior limits. We see no logical distinction between failing to renew all coverage and failing to renew $4,000,000 in coverage on a $5,000,000 policy. We similarly find no merit in Allstate's related suggestion that a policy with limits of $1,000,000 provides "similar

16

coverage" to a policy with limits of $5,000,000. See *Tolleson Lumber Co.*, supra, 200 Ga. App. at 691 (2).

Finally, Allstate alternatively contends that OCGA § 33-7-11 capped Massey's UM coverage under her umbrella policy at $1,000,000, the alleged limits of her excess liability coverage under the umbrella policy at the time of the accident.[12] Pretermitting whether Massey's excess liability coverage under her umbrella policy (which is not at issue in this appeal) was renewed in 2010 and 2011 at $1,000,000 or $5,000,000, Allstate's suggestion that OCGA § 33-7-11 imposed these limits on her UM coverage is meritless. Allstate itself concedes that OCGA § 33-7-11, by its very terms, does not apply to umbrella policies issued on or after January 1, 2009. See OCGA § 33-7-11 (a) (1), (3); Ga. L. 2008, pp. 1192, 1194, 1198, §§ 1, 5 (a); *Wilson*, supra, 293 Ga. at 252. We therefore reject Allstate's contentions that the trial court's ruling may be affirmed or modified on any of these alternate bases.

For each of the above reasons, we reverse the trial court's order granting summary judgment to Allstate and remand this case to the trial court for further proceedings consistent with this opinion.

---

[12] As discussed above, OCGA § 33-7-11 (a) (1) requires motor vehicle liability policies to include UM coverage with the same coverage limits as the liability coverage absent written rejection by the insured.

*Judgment reversed and case remanded. Doyle, C. J., and Reese, J., concur.*