**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 30, 2024**

# In the Court of Appeals of Georgia

A24A1013. CLAY et al v. MORGAN COUNTY et al.

A24A1075. JOINT DEVELOPMENT AUTHORITY OF JASPER COUNTY et al v. CLAY et al.

A24A1076. STATE OF GEORGIA v. CLAY et al.

WATKINS, Judge.

These three cases are the latest appeals arising from litigation challenging the development and construction of Rivian Horizon electric vehicle manufacturing facilities on state-owned property in Morgan and Walton Counties ("the Rivian Project").[1] A group of Morgan County landowners and residents ("the plaintiffs") have filed several lawsuits to stop the project; the plaintiffs voluntarily dismissed their

---

[1] See *Clay v. State of Georgia*, 370 Ga. App. 482 (897 SE2d 886) (2024) ("*Clay I*"); *Joint Dev. Auth. of Jasper County v. McKenzie*, 367 Ga. App. 514, 519-525 (1)-(2) (887 SE2d 372) (2023).

first lawsuit, but their second and third suits remain pending in Fulton County and Morgan County.[2] The instant appeals are taken from the Morgan County trial court's order on the defendants' motion to dismiss. In that order, the trial court rejected the defendants' argument that the currently pending Morgan County suit is barred as duplicative under the Public Lawsuits Act, OCGA § 50-15-4, but concluded that the suit must be dismissed on other grounds. Both the plaintiffs and the defendants now challenge various portions of the trial court's order. For the reasons set forth herein, we conclude that the trial court lacked jurisdiction over this case under the Public Lawsuits Act. In light of our ruling on that threshold issue, we do not reach the trial court's conclusion that the case was subject to dismissal for other reasons.[3]

As our Supreme Court has recognized, Georgia's Public Lawsuits Act, OCGA § 50-15-1 et seq., is designed to protect the public from increased costs caused by the

---

[2] Five of the six plaintiffs in the instant lawsuit were also plaintiffs in the first lawsuit, and all six were plaintiffs in the Fulton County suit.

[3] See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002) ("Under the 'right for any reason' rule, an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different than the reason upon which the trial court relied."); *GeorgiaCarry.Org, Inc. v. Bordeaux*, 360 Ga. App. 807, 812 (2) n.3 (861 SE2d 649) (2021) ("While it appears that the trial court granted the motion to dismiss because the controversy was moot rather than based upon a hypothetical or future contingency, we will affirm the court if it is right for any reason.").

filing of non-meritorious or frivolous lawsuits opposing a public improvement project.[4]
In this vein, OCGA § 50-15-2 provides, generally, that a party bringing a public lawsuit may be required to post a surety bond in order to proceed with their suit. Additionally, OCGA § 50-15-4 limits the number of lawsuits that may be brought against a project: "After a public lawsuit is commenced, no other action relating to the same subject matter shall be commenced, and no trial court shall have jurisdiction of any such subsequent action."

With this statutory framework in mind, we now turn to the instant appeals. The underlying facts, which are not disputed, were summarized in our prior opinion.

> [T]he plaintiffs own, lease, and live on property zoned for agricultural and residential use in Morgan County. The State purchased a number of tracts of land in and around Morgan County, and, in September 2022, the Joint Development Authority of Jasper, Morgan, Newton, and Walton Counties ("the JDA") leased this property from the State and then rented the property to Rivian for economic development of the Rivian Project. This project, which offered extensive tax breaks and incentives to Rivian, was expected to provide 7,500 new jobs, as well as other economic benefits to the State. Shortly thereafter, the JDA began developing the property.

---

[4] *Haney v. Dev. Auth. of Bremen*, 271 Ga. 403, 404 (1) (519 SE2d 665) (1999).

3

The plaintiffs opposed the development, and several of them filed suit in Morgan County [(the "first lawsuit")], asserting that the Rivian Project failed to comply with applicable zoning regulations. They requested a writ of mandamus, a declaratory judgment, and injunctive relief. After the State intervened, the trial court denied a preliminary injunction, and the lawsuit was voluntarily dismissed.

In January 2023, the plaintiffs filed [a] suit in Fulton County, seeking declaratory and injunctive relief. According to the complaint, the Rivian Project failed to comply with local zoning ordinances and had a negative impact on pollution and groundwater. Around the same time, they filed another, nearly identical, complaint in Morgan County.[5]

In the Fulton County case, the State moved for a bond under OCGA § 50-15-2. The trial court granted the motion and ordered the plaintiffs to pay a surety bond in order to proceed with their suit. The plaintiffs appealed, and we issued our opinion on that appeal earlier this year.[6]

Meanwhile, in the Morgan County case, the State and the JDA filed a motion to dismiss on several grounds, including that the trial court lacked jurisdiction under OCGA § 50-15-4 because the case is a duplicative public lawsuit. Morgan County filed

---

[5] (Footnotes omitted.) *Clay I*, 370 Ga. App. at 483-484.

[6] See *Clay I*, 370 Ga. App. 482.

a separate motion to dismiss, and the trial court resolved both motions in a single order. The trial court rejected the defendants' argument that the case was barred by the Public Lawsuits Act but nonetheless dismissed the case, concluding that the plaintiffs had failed to state a claim upon which relief can be granted because state-owned property is not subject to local zoning laws. The plaintiffs, the JDA, and the State have now appealed and cross-appealed from the trial court's order dismissing the Morgan County case.

*Case Nos. A24A1075 & A24A1076*

1. The JDA and the State argue that the trial court erred in concluding that the plaintiffs' action is not a public lawsuit within the meaning of the Public Lawsuits Act. We agree.

The Public Lawsuits Act defines "public lawsuit" as

> any action whereby the validity, reasonability, soundness, location, wisdom, feasibility, extent, or character of construction, improvement, financing, or leasing of any public improvement, project, or facility by any political subdivision, as owner or as lessee, is questioned directly or indirectly, including, but not limited to, actions for declaratory judgments or injunctions or interventions to declare invalid or to enjoin

5

or to prevent such construction, improvement, financing, or leasing as lessor or as lessee and means any action to prevent or declare invalid or enjoin the creation, organization, or formation of any such political subdivision.[7]

In *Haney v. Development Authority of Bremen*, the Supreme Court concluded that this broad definition includes a bond validation proceeding in which residents had intervened to prevent the construction and financing of a public improvement project (namely, a public golf course).[8] In *Mattox v. Franklin County*, we concluded that a lawsuit "challeng[ing] the validity of a SPLOST resolution, intergovernmental agreement, referendum and potential implementation" was a public lawsuit within the meaning of the Act.[9]

Here, the plaintiffs brought lawsuits challenging the Rivian Project, and the opposing parties are clearly political subdivisions within the meaning of the Act. The question, then, is whether the Rivian Project is a "public improvement, project or facility." The trial court decided this issue in the negative, focusing on the Project's

---

[7] OCGA § 50-15-1 (2).

[8] 271 Ga. at 405 (1).

[9] (Punctuation omitted.) 316 Ga. App. 181, 183-184 (1) (728 SE2d 813) (2012).

goal of constructing a private manufacturing plant rather than a public facility. After the trial court issued its order, however, we ruled that the plaintiffs' Fulton County action challenging the Rivian Project was "clear[ly]" a public lawsuit. In our opinion, we emphasized that the Project was expected to bring a wide array of economic benefits to the community and concluded that the use of State-owned land for the Project therefore qualified as a governmental purpose.[10] We now conclude that the instant Morgan County action, like the Fulton County proceeding, is a public lawsuit within the meaning of the Act.

In support of their position that the trial court correctly determined this is not a "public lawsuit," the plaintiffs emphasize that, in the bond resolution adopted by the JDA with respect to the Rivian Project, the JDA stated it had found and determined that

> the Project, being designed by, rented to and used by a private entity for private business purposes, is not a public project and is therefore not subject to the Georgia Local Government Public Works Construction Law (OCGA § 36-91-1 et seq.), and that the [r]ental [a]greement [between the JDA and Rivian] is not a contract for the "physical

---

[10] *Clay I*, 370 Ga. App. at 486 (2) n.6.

performance of services" within the meaning of OCGA §§ 13-10-90 and 13-10-91.

This argument is not persuasive because the plaintiffs have not established that the Public Works Construction Law[11] — which concerns the process local governments must follow when reviewing and accepting bids for "public works construction" projects — has any bearing on the Public Lawsuits Act.[12] Indeed, the Public Lawsuits Act clearly applies to a broader array of projects than the Public Works Construction Law, as the Act applies not only to public works construction projects but to "any public improvement, project, or facility by any political subdivision[.]"[13] Similarly, the plaintiffs have not established that OCGA §§ 13-10-90 and 13-10-91 — which provide that a public employer shall not enter into a contract for the physical performance of services unless the contractor participates in the federal work authorization program — has any bearing on the Public Lawsuits Act.

---

[11] OCGA § 36-91-1 et seq.

[12] OCGA § 50-15-1 et seq.

[13] See OCGA § 50-15-1 (2).

Ultimately, as outlined above, the Rivian Project involves several counties, the State, and the JDA, which is a political subdivision with a statutorily defined purpose of developing and promoting trade, commerce, industry, and employment opportunities for the public good.[14] The Project concerns land that is owned by the State and is expected to provide extensive economic benefits such as employment opportunities and additional tax revenue. And in the instant lawsuit, as in their first lawsuit and the Fulton County case, the plaintiffs seek a declaratory judgment and injunctive relief on the ground that the Rivian Project will violate local zoning ordinances. On these facts, we conclude, as we did in *Clay I*, that the plaintiffs' action challenging the Rivian Project is a public lawsuit within the meaning of the Act. The trial court erred by ruling to the contrary.

2. The State and the JDA next contend that the trial court lacked jurisdiction over the instant case because this is a duplicative public lawsuit challenging the Rivian Project. Again, we agree.

OCGA § 50-15-4 provides, in full, as follows:

---

[14] See OCGA § 36-62-9 (defining the purposes of the Development Authorities Law, under which the JDA was formed).

After a public lawsuit is commenced, no other action relating to the same subject matter shall be commenced, and no trial court shall have jurisdiction of any such subsequent action. This provision, however, shall not diminish any right of intervention of any person or the right of any person to become a named party in a public lawsuit; and nothing herein contained shall be construed as adversely affecting the constitutional rights of any citizen or taxpayer.

Based on the plain language of this provision, the commencement of a public lawsuit precludes the commencement of another action relating to the same subject matter. We have concluded, as discussed in Division 1, that the plaintiffs' lawsuits challenging the Rivian Project are "public lawsuits" within the meaning of the Act. And it is undisputed that the plaintiffs have filed three lawsuits raising nearly identical claims: the first lawsuit, in Morgan County; the Fulton County action; and the instant suit, in Morgan County.

After the State and the JDA moved to dismiss the case as duplicative under the Public Lawsuits Act, the plaintiffs argued in response that their action is not subject to the Act because the Rivian Project is not a "public improvement, project or facility." The plaintiffs have never contended that the case does not meet some other element of OCGA § 50-15-4; crucially, the plaintiffs have never disputed that each of

10

the lawsuits relates to the same subject matter, nor have they disputed that they commenced another lawsuit before the instant action.

The plaintiffs now contend, however, that the instant suit should be treated as their first-filed lawsuit for purposes of the Public Lawsuits Act.[15] They argue that their first lawsuit should not be considered under OCGA § 50-15-4 because it was voluntarily dismissed without prejudice prior to any ruling on its merits. But the plaintiffs have not provided any authority in support of their position, and the plain language of the statute indicates that it is the "commencement" of a public lawsuit, not its resolution, that matters for purposes of this provision.[16] Under the Civil Practice Act, "[a] civil action is commenced by filing a complaint with the court."[17] "[I]f the statutory text is clear and unambiguous, [the reviewing court] attribute[s] to the statute its plain meaning, and [the court's] search for statutory meaning is at an

---

[15] "The trial court did not address [this issue, given that it ruled the action was not a public lawsuit within the meaning of the Act.] Nevertheless, the material facts are undisputed. Therefore, in the interest of judicial economy, we exercise our discretion to decide [this question of law], rather than remanding for the trial court to address [it] in the first instance." *Massey v. Allstate Ins. Co.*, 341 Ga. App. 462, 469 (2) n.9 (800 SE2d 629) (2017).

[16] See OCGA § 50-15-4.

[17] OCGA § 9-11-3 (a).

end."[18] We therefore conclude that, even though the plaintiffs' first lawsuit was voluntarily dismissed without prejudice, it was "commenced" within the meaning of the Act when it was filed with the court.

The plaintiffs further argue that if one of their two currently pending cases must be dismissed under OCGA § 50-15-4, it should be the Fulton County action rather than the instant Morgan County proceeding. In support of this argument, they note that because the State and the JDA have been granted permission to intervene in the instant action, "all of the necessary parties" are present in this case (unlike in the Fulton County case). And they assert that dismissing the Fulton County case rather than the instant action would serve the purposes of the Public Lawsuits Act while also preserving the plaintiffs' right to litigate their claims in court.

The plaintiffs' argument is not persuasive. First, because the Fulton County case is not before us, we cannot dismiss that proceeding. Second, OCGA § 50-15-4 allows for the "commencement" of only one public lawsuit regarding the same subject matter, and that allowance was fulfilled prior to the filing of the instant suit.

---

[18] (Citation and punctuation omitted.) *Mayor & Aldermen of the City of Garden City v. Harris*, 302 Ga. 853, 855 (809 SE2d 806) (2018).

Consequently, the instant case must be dismissed as a duplicative public lawsuit under OCGA § 50-15-4.

3. As a final argument against the application of OCGA § 50-15-4, the plaintiffs contend that the Public Lawsuits Act is an unconstitutional restriction on the jurisdiction of Georgia's superior courts. However, it is well-established that we "will not consider the constitutionality of a statute unless it clearly appears in the record that the point was directly and properly made in the court below and distinctly passed on by the trial judge."[19]

The plaintiffs recognize that the trial court did not issue a ruling on their constitutional argument, but they assert that, rather than deeming their argument to be abandoned, we should remand the case for the trial court to consider the issue. We decline to do so because the plaintiffs did not properly raise this challenge before the trial court.

In order to raise a question as to the constitutionality of a law, the party challenging the statute must show at least three things:

---

[19] (Citation and punctuation omitted.) *Leach v. Warner*, 360 Ga. App. 856, 861 (2) (862 SE2d 153) (2021).

(1) the statute or the particular part or parts of the statute which the party would challenge must be stated or pointed out with fair precision; (2) the provision of the Constitution which it is claimed has been violated must be clearly designated; and (3) it must be shown wherein the statute, or some designated part of it, violates such constitutional provision.[20]

Before the trial court, the plaintiffs' only reference to any constitutional argument was in a footnote in their response to the defendants' motion to dismiss. In that footnote, the plaintiffs stated:

> While Plaintiffs submit that this action does not constitute a Public Lawsuit, to the extent that this Court disagrees, Plaintiffs submit that the Public Lawsuits Act is an unconstitutional restriction on their rights under the Georgia Constitution. Specifically, Plaintiffs show that such act constitutes a violation of their rights under Ga. Const. Art. I, § 1, ¶ XII by depriving them of their right to pursue their own cause of action; constitutes an unconstitutional restriction of Plaintiffs['] right to petition this Court in accordance with Ga. Const. Art. I, § 2, ¶ V(b); is a violation of the equal protection of the laws under Ga. Const. Art. I, § 1, ¶ II by creating a special protection for a limited class of persons not enjoyed by others; under Ga. Const. Art. VI, § 1, ¶ V by seeking to deprive the

---

[20] (Citation and punctuation omitted.) *DeKalb County v. Post Properties, Inc.*, 245 Ga. 214, 218 (1) (263 SE2d 905) (1980); accord *In re D.H.*, 283 Ga. 556, 557 (3) (663 SE2d 139) (2008).

Superior Court of uniform jurisdiction over actions involving the State or any political subdivision thereof; and under Ga. Const. Art. VI, § 4, ¶ I by seeking to deprive the Superior Court of jurisdiction in certain classes of cases.

Thus, although the plaintiffs listed the constitutional provisions they claim to be violated by the Public Lawsuits Act, they made no effort to demonstrate how the Act violated those provisions. Their conclusory statement, entirely devoid of argument and lacking any reference to applicable authority, was insufficient to preserve their argument that the Public Lawsuits Act is an unconstitutional restriction on the superior court's jurisdiction.[21]

*Case No. A24A1013*

4. In their appeal from the trial court's order, the plaintiffs argue that, for several reasons, the trial court erred in concluding they failed to state a claim upon which relief can be granted. Because we have concluded, as discussed above, that the

---

[21] See *In re L.C.*, 273 Ga. 886, 889 (2) (548 SE2d 335) (2001) (concluding that the appellant's constitutional argument was "not properly raised below, as [he] did not specify either the particular part or parts of the statute that he was challenging or how those part or parts of the statute violated the constitutional provisions that he claimed were being violated").

trial court lacks jurisdiction over this case pursuant to OCGA § 50-15-4, we do not address these separate issues.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur.*